**UNITED STATES of America,**
**Appellee,**

v.

**Bernard JERRY, Appellant,**
**and**
**Edgar Saunders.**

No. 72–1528.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Nov. 30, 1972.

Final Briefing Sept. 12, 1973.

Decided Nov. 16, 1973.

Before BIGGS, KALODNER and ADAMS, Circuit Judges.

Francis P. Massco, Bowser & Massco, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Jay C. Waldman, Kathleen Kelly Curtin, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

James A. Strazzella, Philadelphia, Pa., Curtis R. Reitz, Philadelphia, Pa., of counsel, amici curiae.

## OPINION OF THE COURT

BIGGS, Senior Circuit Judge.

This appeal is from a judgment of conviction, based on a plea of guilty. The appellant Jerry has raised questions concerning the propriety of the trial judge's acceptance of his guilty plea and a subsequent refusal to allow the plea to be withdrawn. Because of peculiar procedural occurrences below, this court appointed Amicus Curiae to brief possible issues emanating therefrom.[1]

On September 28, 1971, the Western Pennsylvania National Bank was robbed. Edgar Saunders was apprehended near the scene of the crime, and some of the stolen money and other evidence was recovered.[2] Saunders pleaded guilty. Two days later, Jerry surrendered to the FBI and signed a statement admitting his role as driver of the getaway car for Saunders.[3] Jerry was indicted on two counts charging him with offenses relating to bank robbery in violation of 18 U.S.C. § 2113(a) and (d), to which he entered a plea of not guilty. At a November 17, 1971 hearing, Jerry was permitted to change his plea to guilty on Count one, violation of Section 2113(a). Count two, violation of Section 2113(d), was dismissed. On January 6, 1972, Jerry was sentenced to a maximum term (20 years), and for a study pursuant to 18 U.S.C. § 4208(b) and (c).

After the three month commitment study, Jerry returned to court on April 6, 1972 for final sentencing, at which time he informed the court that he wished to withdraw his guilty plea. The district judge ascertained from Jerry the reasons for requesting withdrawal of the plea,[4] and the Government requested an opportunity to examine Jerry's allegations and suggested that he be examined under oath and that defense counsel be called as a witness. The court granted defense counsel's motion to withdraw from the case and postponed further action on Jerry's motion to withdraw the plea until a transcript of the entry of plea could be obtained and new defense counsel procured.

On April 27, 1972, the court entered a written order permitting Jerry to withdraw his plea of guilty. Francis P. Massco, Esq., was appointed to represent Jerry.[5]

The next day, the Government filed motions for continuance of the trial date

---

1. The parties were given the opportunity to file responses to the Amicus brief. Only the Government has done so.

2. The evidence retrieved, in addition to bank's money, included the shirt, hat and mask (female panties) used in the robbery, a pillowcase in which the money had been placed, and a pistol and ammunition. See Transcript, April 6, 1972, at 46.

3. Transcript, Nov. 17, 1971, at 18–20.

4. Transcript, April 6, 1972, at 3–10.

5. John Bowser, Esq., had been appointed to represent Jerry on April 26, but was replaced by Mr. Massco the next day. Mr. Bowser and Mr. Massco perhaps are law partners.

and reconsideration of the order allowing withdrawal of the guilty plea. The motion for reconsideration, *inter alia*, alleged that "[t]here was no sworn testimony or competent evidence before the Court . . . on the issue of whether defendant was entitled to withdraw his plea," and that "the orderly administration of criminal justice would be severely prejudiced by defendant's being permitted to withdraw his plea of guilty upon unsworn, undocumented self-serving allegations made without opportunity to the government to explore or rebut them. The government would be prejudiced in that it has lost one count of the indictment, and in that considerable time and effort would be required to attempt to relocate certain key witnesses and reprepare this case for trial." Relief in the nature of a "superseding order denying defendant permission to withdraw his plea of guilty, at least pending hearing and argument on the matter" was requested.

The record does not indicate service of the Government's motion for reconsideration on counsel then representing Jerry, Mr. Massco. Rather, the certificate of service accompanying the motion indicates that the motion was served on Mr. Bowser, the attorney appointed on April 26 and replaced by Mr. Massco on April 27.

On May 1, 1972, the court, acting on the Government's motion for reconsideration, entered an order stating, "Because no hearing had been held, the Order of April 27, 1972 was improvidently issued and is hereby rescinded." The order further scheduled a hearing to be held on May 9 and directed defense counsel to file a formal written motion for withdrawal of the guilty plea.[6]

At the conclusion of the May 9 hearing, after testimony and argument, the court denied Jerry's motion to withdraw his guilty plea. Jerry subsequently was sentenced to a term of imprisonment for seven years. This appeal followed.

6. The motion, filed May 5, 1972, stated as follows:

"MOTION TO WITHDRAW PLEA OF GUILTY

"AND NOW, comes the Defendant, Bernard Jerry, by his Attorney, Francis P. Massco, and moves this Honorable Court to permit the Defendant, Bernard Jerry, to withdraw his plea of guilty and to reinstate the Order of Court of April 27, 1972 permitting said withdrawal, and in support of said motion represents as follows:

"1. The Defendant contends that his guilty plea entered on November 17, 1971, was not intelligently entered as the Defendant contends he was improperly advised by prior counsel of record.

"2. The Defendant avers that he was under the impression that he was not scheduled for formal and final sentencing until after the completion of the study of him and that he could withdraw his plea of guilty at any time prior to the formal and final sentencing.

"3. The Defendant avers that manifest injustice would result to him if he is not permitted to withdraw his plea of guilty.

"4. The Defendant avers that he is not guilty of the charges contained in the indictment.

"5. The Defendant avers that the United States of America would not be prejudiced by permitting him to withdraw his plea.

"6. The Defendant avers that he was persuaded to enter a guilty plea after being advised that certain evidence in the possession of the United States Government was impossible to rebut.

"7. The Defendant avers that he was not aware of the possible results of entering a guilty plea and that he was not aware of the possible alternatives available to him.

"8. The Defendant has no objection to and is agreeable to the reinstatement of the second count of the indictment.

"9. The Defendant avers that this formal written motion for withdrawal of his guilty plea is being made pursuant to Order of this Honorable Court dated May 1, 1972 and the Defendant further avers that the Order of this Honorable Court dated April 27, 1972 allowing him to withdraw his plea of guilty is final and binding.

"WHEREFORE, Defendant moves this Honorable Court to enter an Order allowing him to withdraw his plea of guilty in accordance with prior Order of this Court dated April 27, 1972.

"Respectfully Submitted
Francis P. Massco
Bowser & Massco
Attorney for Defendant"

## I.

Before proceeding to the dispute surrounding the acceptance of the guilty plea and the subsequent refusal by the district court to allow it to be withdrawn, we first consider issues pertaining to the permissibility of the district court's order rescinding its prior order which had granted Jerry's motion to withdraw his guilty plea.[7]

### A. *The Power of the District Court to Rescind an Order*

The first question is whether the district court had the power to rescind its order of April 27, 1972 entered through mistake or "improvidence". At common law, the general rule, in criminal as well as civil cases, was that judgments, decrees, and orders were within the control of the court during the term at which they were made, and they could be modified, vacated, or set aside by that court. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922), affirmed the complete power of a federal court over its interlocutory orders. The Court stated: "[I]f an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity." 258 U.S. at 90–91, 42 S.Ct. at 199. The Federal Rules of Criminal Procedure, 18 U.S.C., however, make no provision for rehearing and modifying or setting aside an order entered through mistake. Does the absence of this power from the Rules, which "were intended to constitute a comprehensive procedural code for criminal cases in Federal courts,"[8] preclude its existence? We think not. F. R.Crim.P. 57(b) provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Nothing in the Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, i. e., until the entry of judgment. In short, the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules.

Although research has not uncovered any cases so construing the criminal rules, nor have we been referred to any particularly helpful criminal cases, decisions under the Federal Rules of Civil Procedure do provide some guidance. The Civil Rules, 28 U.S.C., as originally promulgated, contained a somewhat limited provision for relief from a judgment or order. F.R.Civ.P. 60(b) originally provided:

> "*Mistake; Inadvertence; Surprise; Excusable Neglect.* On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through *his* mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 of the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained

---

7. While none of these issues were raised by Jerry's counsel below or on this appeal, they are fundamental to the fairness of the proceedings below and deserve recognition on appeal. See F.R.Crim.P. 52(b); United States v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L.Ed. 555 (1936); Government of Virgin Islands v. Smith, 445 F.2d 1089, 1094 (3 Cir. 1971).

8. Note to Rule 57, Notes to Rules of Criminal Procedure (March 1945).

against a defendant not actually personally notified." (Emphasis added.)

This rule applied to interlocutory as well as final orders[9] and did not authorize the court to grant relief from an order entered because of the *court's* mistake. Despite the fact that Rule 60(b) was generally thought to cover the field,[10] the inherent power of courts to set aside and reconsider interlocutory orders was nevertheless held not to be precluded or limited by the rule. In Bucy v. Nevada Construction Co., 125 F.2d 213, 217 (9 Cir. 1942), the court stated that "Rule 60 does not affect, interfere with, or curtail the common-law power of the federal courts, but . . . the broad power, which was theirs by the common law, to deal with situations where . . . relief should be granted from manifest error, remained inherent in the courts." According to 7 Moore's Federal Practice, ¶ 60.16 [4], at 86 (1972), "[T]he Ninth Circuit reached a correct result in holding that the district court still had power over the order, since it was interlocutory and the action was still pending before the court." See Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5 Cir. 1970), which, in holding that despite the inapplicability of F.R.Civ.P. 60(b), the district court could at any time prior to final decree rescind an interlocutory order, attested to the continued vitality of the Supreme Court's decision in John Simmons Co. v. Grier Brothers Co., *supra.* See also, Cohn v. United States, 259 F.2d 371, 376 (6 Cir. 1958), and Nielsen v. Arabian American Oil Co., 206 F.2d 391 (5 Cir. 1953).

██ We think the principle of the *Bucy* case is sound whether the case *sub judice* be civil or criminal: so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so. See United States v. Bryson, 16 F.R.D. 431, 435 (N.D.Cal. 1954), aff'd., 238 F.2d 657 (9 Cir. 1956), 243 F.2d 837 (9 Cir. 1957), cert. denied, 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34 (1957).

B. *The Need for Notice and an Opportunity to be Heard on the Motion for Reconsideration*

██ The district judge entered his order on April 27, 1972 allowing Jerry to withdraw his guilty plea without notice to the Government. Also as we have stated, the district judge on May 1, 1972, acting on the Government's motion for reconsideration, entered an order rescinding his April 27 order as "improvidently issued" because no hearing had been held. The record does not disclose that Jerry or his then attorney, Mr. Massco, received notice of the Government's motion. However, even assuming that the lack of notice and an opportunity to be heard deprived Jerry of due process of law so as to render the rescinding order constitutionally invalid, such infirmity was cured by the hearing subsequently afforded him on May 9.

Jerry was provided with full opportunity to present objections to the reconsideration of the motion to withdraw his guilty plea and to argue that the court's order of April 27 was correct and should be followed, and Jerry's counsel in fact did so. Jerry's motion to withdraw his plea of guilty, filed May 5, 1972, in addition to addressing the grounds for withdrawal, also averred that "the Order of * * * [the District Court] dated April 27, 1972 allowing * * * [Jerry] to withdraw his plea of guilty is final and binding." The request for relief was to withdraw the plea of guilty "in accordance with the prior Order of * * * [the] Court dated April 27, 1972." At the hearing on May 9, counsel for Jerry strenuously objected to the court's reconsideration of the motion to withdraw the guilty plea: "I would like

---

9. F.R.Civ.P. 60(b) was extensively revised in 1946, becoming applicable to final judgments, orders, and proceedings.

10. See Notes of Advisory Committee on 1946 Amendments to Rules, F.R.Civ.P. 60, subdivision (b).

the record to show we clearly state we filed the formal motion [of May 5] to withdraw the plea on Order of the Court. By no means do we admit your original Order was improvidently entered."[11] Counsel further asserted that "[t]he Order of the Court of April 27 allowed the defendant to withdraw his plea and we feel the Government has the burden to go forward to hear [sic] why that Order should have been rescinded."[12] The Government, however, had met the burden of showing why the order should have been rescinded and reconsidered by calling the judge's attention to the undisputed fact that the order was entered on the basis of unsworn allegations made without opportunity for the Government to explore or rebut them and without any evidence to support them. Recognizing that the Government had met its burden and that the procedure was inadequate, the district judge stated, "I entered the Order improvidently,"[13] and in point of law, such decision was correct. See United States v. Mainer, 383 F.2d 444 (3 Cir. 1967). Testimony was then taken and complete argument made by opposing counsel as to whether the guilty plea should be withdrawn.

Jerry was therefore not prejudiced by the asserted lack of due process. Rights were not *finally* adjudicated by the May 1 order, which was in effect merely an interim measure pending a hearing on May 9 to settle the matter.

C. *Constitutional Limitations on the Power to Reimpose the Plea of Guilty*

1. *Double Jeopardy*

 Jerry must be considered to have been convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him, and jeopardy therefore attached with the acceptance of his guilty plea by the district court. Having been removed from jeopardy by the order of the court allowing withdrawal of his guilty plea, did the reimposition of his guilty plea place him in jeopardy for a second time a violation of the Fifth Amendment?[14]

In our opinion, it did not. As is the case where a defendant by his own motion causes a verdict to be set aside, thereby waiving his constitutional protection against being "twice put in jeopardy" for purposes of re-trial for the same offense, so too where a defendant by his own motion causes the withdrawal of his guilty plea, he has waived his right not to be put in jeopardy a second time. See United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). By requesting that the district court remove him from the jeopardy of the guilty plea, Jerry clearly consented to being "twice put in jeopardy." "The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings." United States v. Jorn, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L.Ed.2d 543 (1971). That policy has not been offended in the case at bar, where no final judgment was entered and Jerry has not been subjected to the harassment of successive prosecutions.

The situation is somewhat complicated by the fact that the form of the second jeopardy was not what Jerry had in mind when he impliedly waived his protection against double jeopardy. No doubt he wanted a second jeopardy to attach by means of trial, not by reimposition of his guilty plea. But the reconsideration of his motion and the reimposition of the guilty plea under the facts of this case no more violates the double jeopardy provision than does the entry of an order by an appellate court reversing a conviction and remanding for a new trial followed by the subsequent re-

11. Transcript, May 9, 1972, at 4.

12. Id.

13. Id.

14. United States Constitution, Amend. V, states in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

instatement of the conviction upon reargument by a court *en banc.* See Spinelli v. United States, 382 F.2d 871 (8 Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

2. *Rights to Trial by Jury and to Confront One's Accusers, and Privilege against Compulsory Self-Incrimination.*

Several constitutional rights are waived when a plea of guilty is entered: the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury guaranteed by the Sixth Amendment, and the right to confront one's accusers protected by the Sixth Amendment. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Assuming for present purposes that Jerry's plea of guilty was a valid one,[15] so that the rights referred to were not constitutionally protected, did the district court's order of April 27, 1972, which allowed Jerry to withdraw his guilty plea, restore such rights *absolutely,* to the effect that the court's subsequent order dated May 1, 1972 rescinding that prior order operated to unconstitutionally deprive Jerry of those rights?

This is indeed a most vexing problem. The withdrawal of a guilty plea seemingly returns a defendant to a pre-trial status where the constitutional rights in question here are crucial to a fair adjudication. On the other hand, if the power of a judge with respect to a motion for withdrawal of a guilty plea is ended when he grants it and he cannot vacate his order for sufficient cause, it seems apparent that the administration of justice might be impeded or even fail. Unfortunately there does not appear to be any authority on the question. But analogy with comparable situations and sound policy dictates that the power of the district judge be upheld in this instance.

When a new trial is granted by a trial court after a verdict of guilty by a jury, the case stands as if there had been no trial. The defendant, as here, may be considered to possess all the constitutional rights inherent in that pretrial status. Yet, if upon proper reconsideration, the order granting the motion for a new trial is vacated and the new trial denied, the case stands where it was left by the verdict of the jury. Fine v. Commonwealth, 312 Mass. 252, 44 N.E.2d 659 (1942). This is in line with the general rule that when a court vacates an order previously entered, the legal status is the same as if the order never existed. Mitchell v. Joseph, 117 F.2d 253 (7 Cir. 1941). The order having become a nullity, no rights, constitutional or otherwise, can be considered as accruing from it. This is not to say that a trial judge may constitutionally rescind every order or judgment and thereby treat it as never having existed. For example, entry of a judgment of acquittal is *final* and cannot be reviewed without running astray of the double jeopardy clause. Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). But so far as the case at bar is concerned, the order rescinded was entirely interlocutory and the district court retained the jurisdiction necessary to question and correct its decision. Just as this court, in carrying out our statutory directive to render such "appropriate" order as is "just under the circumstances," [16] may rehear and revise a prior judgment or order while we retain jurisdiction, *i. e.,* until our mandate has issued, even though the original order may cause constitutional rights to accrue,[17] so too the district court, in exercising its pow-

15. The validity of the plea is discussed in Part II(A), *infra.*

16. See 28 U.S.C. § 2106 (1970).

17. See, *e. g.,* Forman v. United States, 361 U.S. 416, 80 S.Ct. 481; 4 L.Ed.2d 412 (1960), where the original order of the Court of Appeals directed entry of a judgment of acquittal, which would of course ordinarily cause the defendant's double jeopardy rights to accrue, but *on rehearing,* a new trial was ordered.

er to permit the withdrawal of a guilty plea where such action is fair and just,[18] may reconsider and revise its prior order while it retains jurisdiction even though the prior order would cause constitutional rights to attach if left unchanged.

We therefore conclude that a trial judge, to whose discretion is entrusted the duty to permit the withdrawal of a guilty plea prior to sentencing when it is fair and just to do so, should be free to change his ruling if after further deliberation he concludes that justice so requires. A most obvious case is one in which the motion has been granted upon perjured testimony or some other fraud upon the court. In the present case, inadequacies in the procedure necessitated correction. The effect of the court's original order was nullified by the subsequent order of rescission.

## II.

We next turn to the issues originally raised by Jerry in this appeal:

### A. *Validity of the Guilty Plea*

 Jerry contends that his plea of guilty entered on November 17, 1971 should not have been accepted by the court. Focussing on the fact that he still professed his innocence to the charges against him, he claims that an insufficient factual basis existed for the court's acceptance of his plea.[19]

At the November 17 hearing, Jerry said that he had no knowledge that Saunders intended to rob a bank and that he had driven Saunders to the scene of the crime believing that Saunders was going to purchase liquor.[20] The following colloquy then ensued:

"THE COURT: What is it that you are pleading guilty to, then?

"MR. JERRY: I am pleading guilty to the circumstances of evidence against me.

"THE COURT: Evidence of what?

"MR. JERRY: Of statements.

"THE COURT: You mean the fact that you gave a statement to the FBI?

"MR. JERRY: Yes, sir, and to the other statements.

\* \* \* \* \* \*

"THE COURT: You have pleaded guilty to an indictment against you of bank robbery or aiding and abetting in a bank robbery. I want to know what facts there are about what you did that make you think you are guilty of that charge?

"MR. JERRY: Oh, I am not guilty of the charge. Actually, in actuality, I am not, but the circumstances of the situation compels me to bring me before the mercy of the Court."[21]

The statements referred to by Jerry included a signed confession by him given to the FBI. In this statement, Jerry admitted knowing that Saunders intended to rob a bank and explained his participation. There was also a signed statement by Tina Jackson, who had accompanied Jerry and Saunders in the robbery, detailing Jerry's role in the crime, and a summary of an FBI agent's interview with Catherine Jones, another woman accompanying the two men, which again implicated Jerry in the robbery. Saunders too had signed a statement admitting his own participation and describing Jerry's. All these statements and the summary of Miss Jones' interview were read into the record at the hearing.

18. See United States v. Stayton, 408 F.2d 559 (3 Cir. 1969).

19. F.R.Crim.P. 11 provides that ". . . The court may refuse to accept a plea of guilty, and shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

20. Transcript, Nov. 17, 1971, at 8.

21. Id. at 8–9.

Jerry's attorney explained that he had reviewed all the evidence, especially the four confessions implicating Jerry, and the possibility of suppressing Jerry's confession, and advised him that his conviction was an "overwhelming possibility" and that he should consider a plea, and ". . . it is on that basis that he is pleading." [22] Jerry did, however, state that he was unsure, and the court called a short recess so that he could again confer with his attorney.[23]

After the recess, Jerry informed the court that he had decided to plead guilty, counsel detailed what his advice to Jerry had been, and the court accepted the plea.[24] The district judge explained his decision as follows:

"The Court has reviewed, in the interim, the case of North Carolina versus Alpert [Alford] in 400 U.S., page 25, [91 S.Ct. 160, 27 L.Ed.2d 162] which seems particularly applicable to this case. In that situation also, there was a protestation of innocence by the defendant at and before the taking of the guilty plea, but the Supreme Court held if it were voluntarily made, it would be accepted. So, this Court, I believe, has discretion under the circumstances, whether or not to accept the plea. I have given it very serious thought and I conclude that I should accept the plea. I am taking into consideration the fact that Mr. Saunders gave an exculpatory statement under oath before this member of the Court about a week ago, shortly after he pled guilty to participation in the same robbery, as well as pleading guilty to a savings and loan robbery which occurred some three weeks previously.

"I am taking into consideration the demeanor and appearance of Mr. Saunders, my evaluation of how he would appear as a witness before a jury. I am taking into consideration Mr. Jerry's appearance and demeanor and method of speaking and how I feel he might impress a jury.

22. Id. at 16–17.

23. "The Court: Mr. Jerry, you have heard the statement that the prosecution has and I have heard your version of how this incident occurred. Do you realize if the jury believed what you told me today, you would probably be acquitted?

Mr. Jerry: Yes, sir, I know that.

The Court: If the jury, on the other hand, believes the statement you gave the FBI and the statement which was read that was given by the two girls in the car, the possibilities are that the jury could convict you.

Do you understand that?

Mr. Jerry: Yes, sir.

The Court: Do you still wish to plead guilty?

(Long pause.)

Mr. Jerry: Your Honor, I am in an undecisive statement.

The Court: Do you want some more time to talk with your attorney?

Mr. Jerry: Yes, sir.

The Court: Let's take a ten-minute recess.

(Brief recess.)

The Court: Let the record show that we are resuming at 12:20, from 12:00 o'clock." (Transcript, Nov. 17, 1971, at 27–28.)

24. "The Court: Mr. Jerry, you have had an opportunity to think about this and to talk with your attorney. What is your decision?

Mr. Jerry: Guilty, Your Honor.

The Court: You have decided to plead guilty?

Mr. Jerry: Yes, sir.

Mr. Conner: Your Honor, I have advised Mr. Jerry that we can't rely on the Government calling the other three persons as witnesses against him, but we might probably rely on them, in his defense, and if they gave totally exculpating testimony at the trial, they would be faced with the Government cross-examination on the basis of the statements, both oral and written, that were read today.

He is aware of those possibilities.

I have advised him of the applicable law as I know it, of the effect of these statements, of the effect of his own statement, of the possibility of suppressing his statement and of the probability at the time of trial, which I assess as heavily weighted against a verdict in his behalf.

The Court: Then you do recommend a guilty plea?

Mr. Conner: On the basis of my conversations with Mr. Jerry that have taken place on three or four occasions at the jail where we went over the events of this particular day and the remarks made in his statement, I have advised him that he should plead.

The Court: All right." (Transcript, Nov. 17, 1971, at 33.)

"While I think experience in jury trials tends to make one feel less and less able to predict what a given verdict will be under a given situation, I feel that my experience would tend to confirm the opinion of Mr. Conner that it is very likely a jury would return a guilty verdict in this case.

"The statements made by the defendant, Mr. Jerry, the statement made by the witnesses to the Government all seem more likely and more reasonable than the version given by Mr. Jerry today of what transpired.

"I doubt if believing that a jury would accept the fact that Mr. Jerry knew nothing of the purpose of the trip to the shopping center, was unaware of what Saunders planned to do.

"With all these things in mind, I choose to exercise my discretion to accept the guilty plea.

"Very well, Mr. Jerry, we will accept your guilty plea and I will order a presentence report. As soon as the report is received, I will allow your attorney, Mr. Conner, to review it in advance of the hearing, and we will enter sentence after that." [25]

A review of the record makes clear that Jerry was fully advised of his rights and voluntarily entered the plea of guilty.[26] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), established that a defendant's protestations of innocence are not inconsistent with a voluntary, knowing, and understanding guilty plea, and the court may properly accept such plea where it is supported by a strong factual basis in the record. The evidence produced by the Government at the November hearing met that standard. The statements of the witnesses and Jerry's prior confession constituted strong evidence of actual guilt and severely contradicted the version given that day by Jerry. We conclude therefore that the validity of the guilty plea cannot seriously be questioned.

B. *Withdrawal of the Guilty Plea*

A hearing was held on May 9, 1972, to consider Jerry's motion for withdrawal of his guilty plea. Among those testifying was John S. McCarthy, an FBI agent who had worked on the case. Agent McCarthy testified concerning evidence recovered shortly after the robbery: stolen money, the shirt, beige wool knit hat, and pink panties (used for a mask) worn by the robber, the pillowcase used to carry the stolen money, and a pistol and cartridges (other ammunition for the pistol was found in the car Jerry had been driving). He stated that these items were disposed of by the FBI on April 7, 1972 "since the guilty plea was entered and he [Jerry] was sentenced." [27] The shirt, beige wool knit hat, pink panties, and pillowcase had been discarded, the money put back in circulation, and the gun and ammunition returned to local police.

At the conclusion of the hearing, the district court denied Jerry's motion for withdrawal of his guilty plea, stating, "The case of Stratton [*sic*—United States v. Stayton, 408 F.2d 559 (3 Cir. 1969)] emphasizes that the Court in a situation to which I think this case applies may permit the withdrawal of a plea, if that seems fair and just. The Court goes on to say it doesn't mean every motion for withdrawal before sentence be granted. There is no absolute right to withdraw a guilty plea and the right to do it is within the sound discretion of the Trial Court.

"The Court also goes on to show if there is substantial prejudice to the Government, then in the Trial Court's discretion, the motion may be denied.

\*　　\*　　\*　　\*　　\*　　\*

". . . My order of a few days ago, which was improvidently entered, was based on a feeling that in most cir-

---

25. Transcript, Nov. 17, 1971, at 33–35.

26. Id. at 4–6. See also Transcript, May 9, 1972, at 23.

27. Transcript, May 9, 1972, at 49.

cumstances a defendant should be permitted to go to trial, if no other intervening circumstances made that course unjust.

"I admit that when I signed that order, I failed to consider the possible prejudice to the Government. I am now convinced that prejudice to the Government requires that I refuse to accept the defendant's motion to withdraw the guilty plea. The destruction of the evidence will hinder the Government in its prosecution and I do not feel that after this length of time that the defendant should be permitted to withdraw his plea and proceed to trial when the Government's chances of a successful prosecution have been weakened." [28]

■ It is readily apparent that the district court applied the standard to be used when motions for withdrawal of a guilty plea are filed *before* sentencing.[29] Under that standard, the district court may, in its discretion, permit a defendant to withdraw his guilty plea and have a trial if for any reason the granting of the privilege seems fair and just. United States v. Stayton, 408 F.2d 559 (3 Cir. 1969); United States v. Vallejo, 476 F.2d 667 (3 Cir. 1973). However, the right to withdraw a guilty plea is not an absolute one. Attention must be paid to the surrounding circumstances, including any substantial prejudice which would inure to the Government.

United States v. De Cavalcante, 449 F.2d 139 (3 Cir. 1971); United States v. Stayton, *supra.* The granting of such motion "lies within the sound discretion of the trial court and its determination will only be disturbed where it has abused its discretion." United States v. Vallejo, *supra,* 476 F.2d at 669.

■ Under the facts of this case, we cannot find that the district court abused its discretion. Although the physical evidence disposed of was worn and/or carried by Saunders during the robbery, it was referred to in Jerry's written confession and described in the statements made by companions Tina Jackson and Catherine Jones. In view of the likelihood that any testimony by Jerry at a trial would contradict his confession, and the distinct possibility that Miss Jackson and Miss Jones would also contravene their earlier statements,[30] the discarded evidence would serve the important function of corroborating the details of their prior statements. It was therefore within allowable judicial discretion to consider this significant potential prejudice to the Government as determinative in denying the withdrawal of the plea.

We thank the Amici for their able and diligent assistance in solving the problems presented by this case.

The judgment of the district court will be affirmed.

---

28. Id. at 69–70.

29. We need not reach the Government's contention that a motion to withdraw a guilty plea made after entry of the initial sentence, but prior to entry of the "final" sentence pursuant to 18 U.S.C. § 4208(b), should be regarded as made *after* imposition of sentence, thereby calling for the application of a stricter standard ("to correct manifest injustice"—see F.R.Crim.P. 32(d) ; see also Sherman v. United States, 383 F.2d 837 (9 Cir. 1967)), for even under the more liberal pre-sentence standard the district court's ruling must be upheld.

30. See Brief of Appellant, p. 11, which states, "The government . . . is concerned because the actual robber and the two female companions will exculpate the Appellant."