**MONMOUTH COUNTY CORRECTIONAL INSTITUTION INMATES, et al., Plaintiffs,**

v.

**William LANZARO, Sheriff, et al., and William H. Fauver, Commissioner, N.J. Department of Corrections, Defendants.**

Civ. A. No. 82–1924.

United States District Court, D. New Jersey.

April 13, 1989.

James R. Zazzali, Sp. Master, Zazzali, Zazzali & Kroll, Newark, N.J., T. Gary Mitchell, Director, Office of Inmate Advocacy, Office of the Public Defender, Trenton, N.J., for plaintiffs.

John T. Maloney, Deputy Atty. Gen., State of N.J., Dept. of Law & Public Safety, Div. of Law, Trenton, N.J., Malcolm V. Carton, Carton & Falcone, Sp. County Prosecutors, Avon, N.J., for defendants.

HAROLD A. ACKERMAN, District Judge.

This matter is presently before the Court on motion of the public advocate, nominally made pursuant to Federal Rule of Civil Procedure 60(b), to modify a portion of the order of this Court dated September 1, 1988, "which approves partial double bunking in Wings A and B of Monmouth County Jail, in a manner that fixes the capacity of the 32 cells in Wings A and B at 56 inmates." *See* plaintiffs' notice of motion for amendment of part of the order of opinion of September 1, 1988, dated February 15, 1989.

Plaintiffs specifically seek (1) to reinstate the prohibition against double bunking in Wings A and B, contained in the consent judgments of March 18, 1985, and February 4, 1986, and (2) to reduce the total inmate cap by 24 beds thereby setting the maximum inmate male capacity of 536.

In support of the request for modification the public advocate argues that the September 1, 1988 order of the Court in effect modified the terms of two prior consent judgments based on a de novo analysis of the constitutionality of the conditions of confinement, rather than pursuant to the standards under which a court may revise the terms of consent agreements upon which the Court has placed its imprimatur.

The public advocate asserts that defendants did not ask for relief from the terms of these consent judgments and the Court's *sua sponte* decision to do so undermines plaintiffs' confidence in, and renders worthless, such agreements. The public advocate argues that the Court has overlooked the significance of the limited prohibition on double bunking in Wings A and B and failed to apply the standard of review under which the Court may modify a consent agreement.

Plaintiffs seek both restoration of the limited prohibition on double bunking in Wings A and B and a reduction in the total cap that I found the facility able to handle.

In response, the County defendants state that they agree to prohibit the double celling in Wings A and B but object to a reduction of the total cap set since the number of additional beds that could be placed in Wings A and B has never been part of the orders of the Court.

Relatedly, the state defendants also do not object to prohibiting double bunking in Wings A and B but contest the propriety of reducing the male cap because first, no specific cap has ever been set for each wing and second, while the defendants agreed not to double cell Wings A and B after Wings G and H were completed, they never agreed to further reduce the cap that the court set.

I note at the outset that the public advocate brings this motion pursuant to Federal Rule of Civil Procedure 60(b). Rule 60(b) sets forth two circumstances pursuant to which a party may be relieved from a *"final* judgment, order or proceeding ..." (emphasis added). *See United States v. Jerry*, 487 F.2d 600, 605 n. 9 (3d Cir.1973), which states that the rule applies only to final, rather than interlocutory decrees.

Since the order here is interlocutory, it is not subject to the strict standards of Rule 60(b). *See, e.g., Marshall v. Board of Educ.*, 575 F.2d 417, 424 (3d Cir.1978) in which the court articulated the standard for relief pursuant to Rule 60(b). Modification of an interlocutory order, however, may be made "any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity." *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 90–91, 42 S.Ct. 196, 199, 66 L.Ed. 475 (1922). *See also, Jerry, supra,* at 604, in which the Court of Appeals for the Third Circuit observed that

"The power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of court until entry of final judgment and is not inconsistent with any of the rules."

\*     \*     \*     \*     \*     \*

"[Thus], so as long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."

Thus, rather than treating this motion as one made pursuant to Rule 60(b), I shall consider it as one directed to the inherent power of the Court to modify its interlocutory orders, and hence I will inquire as to "what is consonant with justice" to determine whether or not to modify my opinion and order of September 1, 1988.

As stated in the opinion of September 1, 1988, the Special Master, in accordance with the order of reference dated June 6, 1983, and the rules of procedure, conducted hearings "to examin[e] all extant conditions at the jail and to evaluate the defendants' compliance with the order of the Court entered upon [the] *initial report." See MCCI v. Lanzaro*, 695 F.Supp. 759, 772 (D.N.J.1988); as well as the order of reference entered in this matter (emphasis added).

In addition, the Court evaluated "whether evidence of changed circumstances support modifying existing orders and decrees." 695 F.Supp. at 772.

I further observed that a court has the power to modify decrees

"by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaption as events may shape the need.... [A] court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong."

695 F.Supp. at 772, *quoting United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932)

With these principles in mind, I examined the defendants' compliance with the orders of this Court and evaluated the conditions of the facility to determine whether such constituted circumstances that support modification of my existing orders.

A review of my September 1, 1988 opinion reveals that language used therein has contributed to the following two misapprehensions:

*First,* that I adopted specific population caps for each section of the prison and

*Second,* that my decision and order of September 1, 1988 modified the consent judgments entered March 18, 1988, at Paragraph 10 and February 4, 1986, at Paragraph 4 [1] pursuant to which the parties agreed and the Court approved of a prohibition against housing more than one inmate in each cell located in Wings A and B.

I shall deal with these problems seriatum.

■ First, in my opinion of September 1, 1988, I indeed stated, *inter alia,* that the Court adopted specific recommendations regarding the caps of various sections of the facility. *See* 695 F.Supp. at 769.

As the parties correctly noted at the hearing held March 27, 1989, the Court never adopted the Master's initial recommendation regarding caps for specific wings, but rather set a total cap of 304 male inmates without specifying the capacity of the separate units. Hence, any impression to the contrary is inaccurate and therefore I shall modify my opinion at the places referred to above (695 F.Supp. at 769) as follows: Delete the sentence beginning with the words "Specifically following ..." and ending with the words "provision of recreational opportunities," and replace that sentence with the following language:

"The Court adopted the Master's recommendation regarding a total male inmate capacity of 304 mindful that the cap was subject to modification based upon changes to the physical plant, staff, and the provision of recreational activities [5]."

■ Second, in my opinion of September 1, 1988, I also referred to the use of double bunking in Wings A and B. *See* 695 F.Supp. at 769 n. 5, 776.

Specifically, I stated that portions of Wings A and B had been double bunked, *see* Footnote 5, and stated that despite the existence of certain consent judgments, it is "proper to continue partial double bunk-

---

**1.** In addition, I inadvertently listed the dates of the February, 1986 consent judgments as having

been entered in April 1986 and to the extent I did so my opinion shall be modified.

ing" of Wings A and B, *see* 695 F.Supp. at 776.

Once again, during the course of the hearing, the parties clarified a misapprehension that I held. Counsel for the defendants stated that Wings A and B have never been double bunked, that they do not intend to double bunk the units, nor have they asked to do so. Relatedly, the defendants do not seek relief from the consent judgments pursuant to which the parties agreed to prohibit double bunking of those units.

Nothing in my opinion of September 1, 1988 was intended to modify the parties' agreement regarding their agreement not to use Wings A and B to what may be their full capacity.

Thus, the parties' agreement not to double bunk Wings A and B remains in full force and effect and to the extent my decision of September 1, 1988 reflects a modification of these agreements, that decision should now be clarified to reflect that the parties' agreement to prohibit double bunking in Wings A and B remains in full force and effect.

Moreover, my decision of September 1, 1988, shall be amended and clarified to reflect this disposition. Specifically, I hereby delete from Footnote 5 of my opinion, which appears at 695 F.Supp. at 769, the sentence that begins with "Moreover, portions ..." and ends with "64 inmates."

In addition, I shall delete the language of Paragraph (c) that appears at 695 F.Supp. at 776, which begins with the words "Although the ..." and concludes with *"See Union County Jail Inmates v. DiBuono, 713 F.2d 984, 995–1000 (3d Cir.1983),"* and replace Paragraph (c) with the following language:

"Under the law of this Circuit, *Union County Jail Inmates v. DiBuono,* 713 F.2d 984, 995–1000 (3d Cir.1983), and in light of the improved conditions of confinement of Wings A and B, it may be proper, upon application for relief from the consent judgments of March, 1985, and February, 1986, in which the parties agreed to prohibit double bunking in those wings, to double bunk the cells therein."

■ Finally, with respect to the advocate's request that I reduce the total cap from 560 to 536, I first note that the Court adopted the cap of 304 without modification in 1984. In my opinion of September 1, 1988, I specifically found that in light of the renovations to the physical plant and other improvements to the facility, including the addition of 256 beds in newly constructed Wings G and H, the male cap should be increased to 560.

While this number reflects a maximum capacity, it does not prohibit the parties from agreeing to house less prisoners at the facility. At no time has the Court modified the cap nor does the Court's imprimatur on the parties' agreement to house less inmates reflect a modification of a fact finding of this Court regarding the capacity of the facility.

Thus, the parties' agreement not to use the facility to its full capacity is not a basis upon which the Court must modify such a factual conclusion. In the absence of changed facts, circumstances or the law, the order and opinion of this Court dated September 1, 1988 regarding the population capacity of MCCI need not be modified.

Thus, as movant has failed to demonstrate a basis upon which this Court, consonant with justice, need modify its conclusion of September 1, 1988, the population cap set shall not be disturbed and the advocate's request that I do so is denied.

An order in conformance with this opinion has been filed by the Court.