*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-1001

ANGEL BERNAL, APPELLANT,

v.

UNITED STATES, APPELLEE.

06/29/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(CF1-9213-14)

(Hon. Michael Ryan, Trial Judge)

(Argued March 8, 2017                                              Decided June 29, 2017)

*Daniel S. Harawa*, Public Defender Service, with whom *Samia Fam* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Peter S. Smith*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *Danny Nguyen*, and *Rebekah Holman*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[*] MCLEESE, *Associate Judge*, and FERREN, *Senior Judge*.

---

[*] Chief Judge Blackburne-Rigsby was an Associate Judge at the time of argument. Her status changed to Chief Judge on March 18, 2017.

BLACKBURNE-RIGSBY, *Chief Judge*: Following a jury trial, appellant Angel Bernal was found guilty of sexually abusing, over the course of a year-and-a-half, E.A., the minor daughter of appellant's common law wife.[1] The government's evidence included testimony from appellant's common law wife, Jacqueline Alvarez, and E.A., and DNA evidence that matched semen found on E.A.'s perianal-buttocks and external genitalia to appellant's saliva recovered from a police buccal swab. Appellant's sole argument on appeal is that the trial court erred in granting the government a one-week continuance prior to trial. The continuance gave the government enough time to procure a second buccal swab of appellant and match his DNA to semen recovered from E.A. after the trial court had suppressed the first buccal swab on Fourth Amendment grounds. We conclude that the trial court did not err, and accordingly did not abuse its discretion, in granting the government a one week continuance. We affirm.[2]

---

[1] *See* D.C. Code §§ 22-3008, -3020 (a)(1)-(2) (2012 Repl.), D.C. Code § 22-3002, -3020 (a)(1)-(2) (2012 Repl.). Specifically, appellant was convicted of four counts of first-degree child sexual abuse (with aggravating circumstances) and one count of first-degree sexual abuse (with aggravating circumstances). The aggravating circumstances in each instance was that the victim, E.A., was "under the age of 12 years at the time of the offense" and that "the actor [appellant] had a significant relationship to the victim," specifically, appellant "acted as E.A.'s father-figure for eight years."

[2] The government concedes that Counts Three and Four, only, merge. Accordingly, we remand solely for the trial court to vacate appellant's conviction

(Continued . . .)

## I.     Background

### A. *Factual Background*

Appellant was in an eight-year relationship with Ms. Alvarez and lived in the same household as Ms. Alvarez and E.A. since E.A. was one year old.  E.A. refers to appellant as "my dad."  According to E.A., appellant sexually abused her about "twice a week" starting in the second grade.  The abuse included both oral and vaginal penetration.[3]  Ms. Alvarez did not know about the abuse because it always occurred at night when Ms. Alvarez was at work at a nearby restaurant.  However, Ms. Alvarez discovered the abuse on May 23, 2014, when she left work at around 11:00 p.m. without first texting or calling appellant, as she normally would do.  When she got home, she noticed that the bedroom door was locked and, upon unlocking the door with a key, Ms. Alvarez saw appellant lying with E.A. on the bed.  According to Ms. Alvarez, she saw that appellant "had his hands spread out on E.A.'s abdomen," and that E.A. was pulling up her pajamas.  Ms. Alvarez

---

(. . .continued)
for Count Three.  Because the sentences at issue are concurrent, resentencing is not necessary.  *See, e.g.*, *Collins v. United States*, 73 A.3d 974, 985 (D.C. 2013).

[3]  For example, E.A. testified that appellant "put his parts in my private part" and, in a separate incident, "tried to put [her] mouth on his private [part]."

also noticed that appellant, who was wearing nothing but shorts, had an erect penis as he stood up. Ms. Alvarez testified that she was in a state of "shock" and was "devastated."

On the morning of May 24, E.A. told Ms. Alvarez that appellant had vaginally penetrated her the night before. In response, Ms. Alvarez called 911. The police took E.A. to Children's National Medical Center, where a medical examination was conducted. The medical examination revealed semen present on E.A.'s perianal-buttocks and external genitalia.

### B. Police Custody

Metropolitan Police Department ("MPD") Detective Jonathan Rosnick arrested appellant at his place of employment in the afternoon of May 24. Appellant, who was from El Salvador and of limited English-language proficiency, was interviewed by Detective Rosnick at the Fourth District with the assistance of Officer William Vega, a certified Spanish-language interpreter. In Spanish, Officer Vega read appellant his *Miranda*[4] rights through the Spanish version of

---

[4] 384 U.S. 436 (1966).

MPD's PD-47 form. In response to question three, "Do you wish to answer any questions?", appellant answered that he did not want to answer questions. Nonetheless, the police continued their interrogation. The government concedes that the government's failure to respect appellant's decision violated his *Miranda* rights. During the subsequent interrogation, appellant confessed to sexually abusing E.A.[5]

Following appellant's confession, appellant was moved to the Central Cellblock at MPD Headquarters; at around 6:00 p.m., Detective Rosnick, alone, visited appellant for a buccal swab sample. In English and without the presence of a Spanish interpreter and without first securing a warrant, Detective Rosnick asked appellant for a saliva sample and appellant, in response, agreed to provide one. The DNA of the saliva sample matched the semen found on E.A.

---

[5] According to the government, appellant admitted to sexually abusing E.A. for one year, which started in the beginning with him "touch[ing] her legs and her vagina on top of her clothes," but that it then escalated to him "penetrating her vagina with his penis." Appellant also stated that, "had he not been arrested, it is possible he would have sexually abused [E.A.] again because he is out of control." He also repeatedly said that he was "guilty."

## C. *Procedural History*

Appellant filed pre-trial motions to suppress both his confession and DNA sample, and the trial court conducted a motions hearing on the matter on May 6 and 8, 2015. At the start of the hearing, the government conceded that appellant's confession was the result of a *Miranda* violation and, accordingly, the government agreed that it would not introduce the confession in its case-in-chief, and that it would only introduce the confession "for impeachment purposes should [appellant] testify." The court then heard testimony from Officer Vega and Detective Rosnick on their conduct in procuring the confession and saliva sample.

At the beginning of the second day of the motions hearing, government counsel moved for a thirty-day continuance in the trial, which at the time was slated for May 11, for two reasons. First, the government sought authorization and additional time to secure a second buccal swab based on the probable cause that existed at the time of appellant's arrest. In the government's view, this would solve the need to consider whether the first swab was taken illegally. Second, the

government had received appellant's "expert notice for child suggestivity"[6] only three days earlier, so the government sought additional time to consider whether it "would need to call its own expert for rebuttal." Appellant opposed continuance of the trial. Later that day, the trial court orally denied the government's motion to continue "based on the fact that both sides are ready otherwise." The court noted, however, that it viewed the government's request for authorization to obtain a second buccal swab "as being one that is separate from the motion to continue" for both obtaining and testing a second swab. The trial court reserved a formal ruling on the DNA sample procured by Detective Resnick.

On May 10, the government filed a written motion for the court to reconsider its denial of the thirty-day motion to continue based on the same two grounds it had asserted during the motions hearing on May 8. The government also asked the court to reconsider its request for appellant to submit to a second buccal swab. The government stated that, should the court deny its motion to reconsider its request for thirty days, "the government will request leave to file a

---

[6] On May 4, 2015, appellant's defense counsel, the Public Defender Service, notified the government that it may call Dr. Bradley McAuliff, "an expert in the field of children's suggestivity and forensic interviewing." Specifically, the expert would be called to discuss how children in particular are susceptible to giving false information in response to misleading interviewer questions and confirmation bias.

dismissal of the indictment in this case, without prejudice, in order to seek a search warrant for [appellant's] buccal swab."

On May 11, the trial court in a written order granted appellant's motion to suppress the DNA evidence recovered from appellant by Detective Resnick at MPD Headquarters. The court concluded that the warrantless seizure of appellant's DNA was nonconsensual, even though appellant had agreed to the buccal swab, because his consent was not knowingly and voluntarily given. *See Martin v. United States*, 952 A.2d 181, 186 (D.C. 2008) ("To justify a search [or seizure] under the consent exception, the government must prove by a preponderance of the evidence that consent was, in fact, freely and voluntarily given.") (citation and internal quotation marks omitted).[7] Therefore, suppression of the sample was warranted as a violation of the Fourth Amendment. The trial court also concluded that the DNA sample should be suppressed on the alternative ground that Detective Resnick violated the District of Columbia's Interpreter Act. *See* D.C. Code § 2-1902 (e)(3) (2012 Repl.). The court ruled that the DNA

---

[7] Salient facts that supported the trial court's decision include: (1) appellant's lack of familiarity with the legal system; (2) his low level of education; (3) the lack of a Spanish interpreter at the time; and (4) appellant's lack of confidence that his choice not to give a saliva sample would be respected, given the police's earlier refusal to stop police questioning after appellant had said that he did not want to answer any more questions.

evidence recovered from the buccal swab was inadmissible in the government's case-in-chief, but could be used during rebuttal if appellant "opens the door."

Thereafter, the parties met with the trial court to discuss pending matters before trial. The government stated that the court's order did not change its position on its still-pending motion for reconsideration of the trial court's denial of its motion for a thirty-day continuance. The parties and the court engaged in a brief colloquy and the court affirmed its decision to deny the government its request for a thirty-day continuance. However, the court then stated that it was willing to give the government "a week" based solely on the late expert notice by appellant's counsel. At the government's urging, the court also stated that it was willing to sign the government's motion for a second buccal swab because, in the court's view, the government has a "basis for asking for one, independent of [the sample that the court had] suppressed" earlier. The court emphasized, however, that "the late-breaking expert witness notice" was the only reason for the one-week continuance; and although the government could try, the trial court did not care whether a week gave the government enough time to procure a second DNA test. Indeed, the trial court expressed some doubts about the feasibility of a second test given the time constraints. With those conditions, the government agreed with the court's compromise of a one-week continuance.

The government took a second buccal swab of appellant and was ultimately able to procure a second DNA testing within the one-week confine. Appellant sought to exclude the second DNA test results as a Super. Ct. Crim. R. 16 violation, but the court denied appellant's motion. Thereafter the case went to trial where the jury heard that the semen found on E.A. matched the second buccal swab sample provided by appellant. This appeal followed.

## II. Discussion

On appeal, appellant challenges the trial court's decision to grant the government a one-week continuance.[8] Specifically, appellant argues that the trial court erred in granting the government's motion for *reconsideration* for a thirty-day continuance because the government did not offer any new information to justify reconsideration of the court's initial ruling.

---

[8] We note that appellant does not challenge the trial court's decision authorizing the government to take a second saliva sample from appellant. Appellant also does not challenge the trial court denial of his request to exclude the second DNA match as a violation of the government's Super. Ct. Crim. R. 16 obligations.

Even assuming, without deciding,[9] that the trial court's decision can be construed as a grant of the government's motion for reconsideration in part, we are not persuaded by appellant's argument that a motion for reconsideration can only be granted when the party seeking reconsideration "presents newly discovered evidence, [shows that] there has been an intervening change in the law, or . . .

---

[9] It is questionable whether the trial court's actions here can be characterized as a grant of a motion for reconsideration when it had affirmatively denied the government's request for a thirty-day continuance, twice. At no time did the government seek a one-week continuance; rather, it may be more accurate to characterize the court's allowance of a one-week continuance as a *sua sponte* action by the court to give the government time to consider appellant's late disclosure of its expert witness. The trial court has considerable discretion in deciding whether to grant or deny a continuance. *Moctar v. United States*, 718 A.2d 1063, 1065 (D.C. 1998). "Relevant factors in determining whether there has been an abuse of discretion include the reasons for the request for a continuance, the prejudice resulting from its denial, the party's diligence in seeking relief, any lack of good faith, and prejudice to the opposing party." *Brooks v. United States*, 130 A.3d 952, 960 (D.C. 2016) (citation and internal quotation marks omitted). Here, the government requested a continuance for two reasons: (1) to get a second buccal swab and DNA testing; and (2) to consider whether the government would seek a rebuttal expert to appellant's expert. While the court rejected the government's first reason, the court did consider whether it would be "reasonably necessary" and "just" to grant the government a continuance for the second reason. *See id.* In so doing, the court appropriately considered the factors that weighed in favor of a one week continuance, such as the government's reason for the request and the lack of prejudice to appellant, and offered the government a one-week continuance to specifically evaluate appellant's late expert notice.

demonstrate[s] that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).[10]

We do not read the trial court's authority to grant a motion for reconsideration so narrowly, especially in light of the great deference we give to trial courts over issues pertaining to case management. *See, e.g.*, *Johnson v. Washington*, 756 A.2d 411, 416 (D.C. 2000). Our recent decision, *Marshall v. United States*, 145 A.3d 1014 (D.C. 2016), governs the standard by which a trial court may revisit an earlier interlocutory decision. In *Marshall*, this court considered the issue of whether the trial court has the authority to reconsider an order granting a motion to withdraw from a guilty plea. *Id.* at 1016. We held that the trial court does have such authority, so long as the reconsideration was "consonant with justice." *Id.* at 1019 (quoting *United States v. Jerry*, 487 F.2d

_____

[10] Appellant also relies on the "law-of-the-case" doctrine in arguing that the court cannot revisit its earlier decision denying the motion to continue. The law-of-the-case doctrine states that "once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court." *Minick v. United States*, 506 A.2d 1115, 1116 (D.C. 1986) (per curiam) (citations and internal quotation marks omitted). The law-of-the-case doctrine does not apply, however, to interlocutory rulings that "do not settle the law of a case and are not conclusive or binding on the trial judge, who has the ultimate responsibility of deciding the case on the merits." *Sowell v. Walker*, 755 A.2d 438, 444 (D.C. 2000) (quoting *District of Columbia v. Faison*, 728 A.2d 688, 690 (D.C. 1971)). There is no question that the challenged decision here was an interlocutory decision that was neither conclusive nor binding on the trial court.

600, 604-05 (3d Cir. 1973). Specifically, we observed that this court has held that "trial judges in Superior Court are free to rely on their inherent powers where superseding procedural rules and constitutional restraints are absent[,]" and that we have also "noted that while there are no procedural rules (civil or criminal) that allow for reconsideration of interlocutory orders, nothing prevents a trial court from doing so while it exercises plenary jurisdiction over a case." *Id.* at 1018 (citing *Siddiq v. Ostheimer*, 718 A.2d 145, 148 (D.C. 1998) and *Williams v. Vel Rey Props.*, 699 A.2d 416, 419 (D.C. 1997)). Accordingly, we adopted the Third Circuit's standard for criminal motions for reconsideration in *Jerry* and held that there are "no procedural restraint[s] to the trial court's reconsideration of its earlier improvident order, so long as it was, in fact, interlocutory, and reconsideration was 'consonant with justice.'" *Id.* at 1019 (quoting *Jerry*, *supra*, 487 F.2d at 604-05). For example, in *Marshall*, we concluded that it was "consonant with justice" for the trial court to reconsider its ruling on appellant's motion to withdraw his guilty plea because "the case had not proceeded to trial," the "trial court recognized its failure to conduct a factual inquiry and fully to analyze factors intended to guide it in its exercise of discretion," and "in light of the government's proffer" that "placed the appellant's motive for seeking to withdraw his plea into question." *Id.* at 1019-20 (footnotes omitted). Similarly, the trial court in the present case fully analyzed the government's reasons for requesting the continuance, an analysis that

is not otherwise apparent from the record because the initial denial of the continuance was due to both parties being ready for trial.

Here, the court's decision to grant the government a one-week continuance was also "consonant with justice" because, although the court did not consider it fair for appellant to wait thirty days to proceed to trial so that the government can rectify its own initial unlawful action, the court indicated that a seven-day continuance was appropriate given appellant's late disclosure of its expert. *Id.* The trial court's decision reflects a thoughtful balancing of competing considerations, which we cannot say was an abuse of discretion.[11]

---

[11] Appellant makes a few additional arguments relating to the motion to continue that we can address summarily.

First, appellant argues that the trial court granted the government a continuance because the court felt threatened by the government's proffer that it would seek to dismiss the case without prejudice if the court did not grant it a continuance, and that the court failed to recognize that it was authorized to block the government's request for dismissal without prejudice. We are not persuaded by this argument. Super. Ct. Crim. R. 48 (a)(2) states that, "The government may, with leave of court, dismiss an indictment." There is no evidence that the trial court did not recognize that dismissal required its approval beforehand. "Judges are presumed to know the law." *Cook v. United States*, 828 A.2d 194, 196 n.2 (D.C. 2003). Further, the government's written motion expressly stated that, "Should the [c]ourt deny the government's motion to continue . . . the government *will request leave* to file a dismissal of the indictment in this case . . . ." (emphasis added). Accordingly, appellant cannot meet its burden in demonstrating that the trial court was unaware of its authority in this matter.

(Continued . . .)

### III. Conclusion

Based on the preceding reasons, we affirm appellant's convictions on appeal. This case is remanded solely for the trial court to merge Counts Three and Four, without the need for resentencing.

---

(. . .continued)

Second, appellant claims that the trial court should have denied the continuance because the "not-so-subtle subtext of the government's request was that it 'really' and 'obviously' wanted the continuance to test the second sample." That may be true but, as appellant concedes, there is no legal ground to prevent the government from procuring the second buccal swab. Appellant could have challenged the trial court's decision to authorize a second buccal swab, but he did not do so.

Third, appellant argues that the trial court lacked discretion to grant the continuance due to the timing of the expert notice. This argument is without merit. The trial court has broad discretion to grant or deny a continuance.