**STATE NATIONAL INSURANCE COMPANY, Appellant**

v.

**The COUNTY OF CAMDEN; Donna Whiteside**

No. 14-4766

United States Court of Appeals, Third Circuit.

Argued on September 16, 2015

(Opinion Filed: May 24, 2016)

See also 10 F.Supp.3d 568.

Walter J. Andrews, Esq. [ARGUED], Michael S. Levine, Esq., Hunton & Williams, 1751 Pinnacle Drive, Suite 1700, McLean, VA 22102, Joshua S. Paster, Esq., Hunton & Williams, 200 Park Avenue, 52nd Floor, New York, NY 10166, Counsel for Appellant

Catherine J. Bick, Esq., Michael J. Canning, Esq. [ARGUED], Matthew N. Fiorovanti, Esq. [ARGUED], Giordano Halleran & Ciesla, 125 Half Mile Road, Suite 300, Red Bank, NJ 07701, Counsel for Appellee

Before: FISHER, CHAGARES and JORDAN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

State National appeals from the dismissal of its claims against Donna Whiteside for legal malpractice. The District Court dismissed State National's claims because State National could not demonstrate that Whiteside's actions proximately caused State National to suffer any damages. In this case, we must first determine whether this Court has jurisdiction over State National's appeal. Only then may we determine whether the District Court erred in dismissing the claims against Whiteside.

For the reasons that follow, we hold that this Court lacks jurisdiction over State National's appeal because it was untimely. Accordingly, we do not reach the merits of State National's claim that Whiteside was improperly dismissed from its case.

## I.

### A. *Factual History*

This dispute centers on Donna Whiteside's representation of the County of Camden, New Jersey ("County") in a lawsuit brought by Nicholas Anderson, which resulted in a jury award paid, in part, by the County's excess insurer, State National Insurance Company ("State National").

On December 23, 2004, Nicholas Anderson was seriously injured after crashing his car into a guardrail on a road owned and maintained by the County. Anderson filed suit against the County for negligence in maintaining the road and guardrail and sought $5 million in damages.

The County maintained an insurance policy with State National whereby the County was responsible for the first $300,000 of losses and State National's obligations were triggered only if a potential loss exceeded this amount. In order to invoke State National's coverage obligations, the policy required the County to "provide an adequate defense and investigation of any action for or notice of any actual, potential or alleged damages." In the event that the County failed to meet this requirement, the policy provided that State National "shall not be liable for any damages or costs or expenses resulting from any such occurrence." The policy limit was $10 million.

Pursuant to the policy, the County utilized its own in-house attorney, Donna Whiteside, Assistant County Counsel, to defend the County against the Anderson lawsuit. According to State National, the County did not notify State National of the Anderson lawsuit until several months after it was filed and after the County first became aware of the claims against it. Whiteside initially informed State National

that the case was meritless and valued it at $50,000. In the midst of trial, Whiteside changed her valuation and requested the full $10 million policy limit to settle the claims with Anderson. After receiving this valuation, State National conducted an independent review and denied the County's request for $10 million. After the parties failed to settle, the Anderson case continued to trial. On October 17, 2008, the jury reached a verdict in favor of Anderson and awarded him $31 million, which was later remitted to $19 million. ·

## B. *Procedural History*

Four days after the verdict in the Anderson case, State National filed suit, seeking a declaratory judgment that it was not obligated to provide coverage under the policy because the County had breached the policy contract. It alleged that the County failed to timely notify State National of the case and failed to mount an adequate investigation and defense of the lawsuit, as required by the policy. State National also asserted claims directly against Whiteside for professional negligence, legal malpractice, breach of fiduciary duty, and breach of contract.

In its first amended complaint, State National alleged that Whiteside's defense of the case fell well below "adequate" because she did not present evidence or assert defenses that would have either totally cut off the County's liability or would have substantially lowered Anderson's recovery. Specifically, State National alleges that she did not present expert reports or testimony, raise available statutory defenses, or cross-examine Anderson's expert witnesses. Because Whiteside advised State National on the case status, progress, and likely outcome, State National claims that an attorney-client relationship existed between it and Whiteside.

Whiteside moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On March 17, 2010, the District Court granted her motion, holding that the County and Whiteside were not two distinct entities based on *respondeat superior* and the contract between State National and the County, and thus any liability of Whiteside must be borne by the County. Moreover, the District Court found no proximate cause because if Whiteside did not provide an adequate defense, then State National was not obligated to pay. But if Whiteside did provide an adequate defense, then State National was subject only to its existing contractual duty to pay.

Following the dismissal, on March 30, 2010, State National filed a motion under Rule 59(e), asking the District Court to reconsider its dismissal of Whiteside. The District Court denied State National's motion on June 25, 2010. The District Court also denied State National's motion for certification under Rule 54(b), which if granted, would have allowed State National to immediately appeal Whiteside's dismissal.

Although Whiteside was dismissed from the litigation, State National's case against the other defendants went on. Over the next four years, all of State National's claims against the other defendants were resolved, and only the claims against the County remained. Eventually, the District Court denied State National's motion for summary judgment on its remaining claims against the County. State National alleges that in the District Court's March 31, 2014, order denying summary judgment, the District Court undermined its prior ruling that served as the basis for dismissing Whiteside. Accordingly, State National sought leave to renew its claims against Whiteside under Rule 60(b)(6), which permits the District Court to grant

relief from a final judgment, order, or proceeding.

Before the District Court ruled on State National's Rule 60(b)(6) motion, State National and the County reached a settlement. The parties filed a joint Stipulation of Dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) on October 14, 2014. The Stipulation of Dismissal acknowledged that State National wanted to renew its claims against Whiteside, but State National made no motion or request before the District Court apart from the clause in the Stipulation of Dismissal.

On December 1, 2014, the District Court denied State National's Rule 60(b)(6) motion to renew the claims against Whiteside. It rested on the same reasoning as its earlier ruling and rejected State National's arguments that its March 31, 2014, order called any of its prior rulings into question. In that opinion, the District Court ordered the clerk of court to terminate the litigation and close the case.

The case was closed on December 1, 2014. State National filed its Notice of Appeal on December 16, 2014. In the Notice of Appeal, State National sought an appeal from the District Court's December 1, 2014, order denying its motion under Rule 60(b)(6) to reinstate its claims against Whiteside. The Notice did not reference the underlying Rule 12(b)(6) dismissal, and it was filed sixty-two days after the Stipulation of Dismissal had been entered.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. Before reaching the merits of this appeal, we must consider whether we have appellate jurisdiction.[1] We exercise plenary review in answering this question.[2]

"The timeliness of an appeal is a mandatory jurisdictional prerequisite."[3] Under Federal Rule of Appellate Procedure 4(a)(1), the appellant must file a Notice of Appeal "with the district clerk within 30 days after entry of the judgment or order appealed from."[4] Because the thirty-day time limit embodied in Rule 4(a)(1) derives from a statute, it is a "jurisdictional requirement."[5]

In addition to the requirement that it must be timely filed, the Notice of Appeal must also specify the "judgment, order, or part thereof being appealed."[6] If an appeal is taken only from a specified judgment, this Court does not exercise jurisdiction to review other judgments that were not specified or "fairly inferred" by the Notice.[7]

In our case, State National faces two hurdles with respect to this Court's appellate jurisdiction. First, the parties voluntarily dismissed this case on October 14, 2014—sixty-two days before State National filed its Notice of Appeal. Because of the mandatory jurisdictional prerequisite em-

1. *Rothman v. United States*, 508 F.2d 648, 651 (3d Cir. 1975) ("Before a court may properly address the merits of an appeal, it is mandated to determine whether it has jurisdiction to consider the appeal.").

2. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 155 (3d Cir. 2014).

3. *Poole v. Family Court of New Castle Cty.*, 368 F.3d 263, 264 (3d Cir. 2004) (citing *Unit-*ed States v. Robinson*, 361 U.S. 220, 224, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960)).

4. Fed. R. App. P. 4(a)(1)(A).

5. *See Bowles v. Russell*, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007).

6. Fed. R. App. P. 3(c)(1)(B).

7. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010).

bodied in Federal Rule of Appellate Procedure 4(a)(1)(A), we permitted the parties to submit supplemental briefing on the issue of whether the parties' voluntary termination of the case constituted a final judgment from which the thirty-day time limit in Rule 4 began to run.

Second, even if the Stipulation of Dismissal did not trigger the thirty-day time limit, State National's Notice of Appeal specified only the District Court's December 1, 2014, order denying State National's Rule 60(b)(6) motion. It made no mention of the underlying dismissal of Whiteside on Rule 12(b)(6) grounds. Yet, in its brief before this Court, State National argued only that the Rule 12(b)(6) dismissal was error; it made no arguments that the District Court erred in denying its motion under Rule 60(b)(6).

### A.

The first issue we must address is whether State National's Notice of Appeal was timely. Federal Rule of Appellate Procedure 4(a)(1)(A) required State National to file its Notice of Appeal within thirty days of the judgment it was appealing. Here, State National filed its Notice on December 14, 2014, well within thirty days of the order denying its Rule 60(b) motion on December 1, 2014.

Although at first glance, the timeline of State National's appeal seems to comport with the requirements of Rule 4, the nature of State National's Rule 60(b) motion and the Stipulation of Dismissal complicate the issue.

### 1. *State National's Rule 60(b) Motion*

The District Court dismissed State National's claims against Whiteside on Rule 12(b)(6) grounds on March 17, 2010—nearly four and a half years before this appeal was taken. After Whiteside's dismissal, the case was not immediately appealable because other parties and claims remained in the litigation.[8] More than four years later, on March 31, 2014, the District Court denied summary judgment on State National's claims against the County. State National, believing this opinion called into question Whiteside's dismissal, sought to get another bite at the apple before an appeal to this Court.

In order to get review of the District Court's earlier dismissal of Whiteside, State National filed a Rule 60(b)(6) motion on April 25, 2014, asking the District Court to reconsider its prior dismissal. Although Rule 59(e) would have been the most obvious route to get reconsideration of the prior dismissal, State National had already done so four years earlier. Without the ability to file a timely motion under Rule 59(e),[9] State National attempted to reinstate its claims against Whiteside using Rule 60(b)(6), which provides that "the court may relieve a party ... from a final judgment, order, or proceeding for ... any other reason that justifies relief."[10]

---

8. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

9. Rule 59(e) requires the motion to reconsider the judgment be filed "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Whiteside was dismissed four years before State National filed its motion to renew its claims against Whiteside.

10. Fed. R. Civ. P. 60(b)(6).

■ But Rule 60(b) grants the district court the power to relieve a party from a *"final* judgment, order, or proceeding."[11] The March 17, 2010, order dismissing Whiteside—and not all of the defendants—was not a final order. Rather, it was an interlocutory order that was not immediately appealable unless the District Court certified it under Rule 54(b), which it refused to do.[12] Thus, because the underlying dismissal of Whiteside was not a "final judgment, order, or proceeding," State National's Rule 60(b)(6) motion was not a proper avenue by which to challenge her dismissal.[13]

■ Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders. Under its inherent powers, the District Court could have reinstated Whiteside at any point during which the litigation continued. The power to reconsider prior interlocutory orders depends on the District Court retaining jurisdiction over the case.[14]

## 2. *The Stipulation of Dismissal*

The parties, however, filed a Stipulation of Dismissal under Rule 41(a)(1)(A)(ii), and pursuant to that Stipulation, the parties agreed to voluntarily dismiss the case. Rule· 41(a)(1)(A)(ii) provides that "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."[15]

The· language of the rule makes clear that a dismissal under Rule 41(a)(1)(A)(ii) does not require a court order, nor does it require the approval of the court.[16] Because a dismissal under Rule 41(a)(1)(A)(ii) does not require a court order or approval, we have held that "[t]he entry of such a stipulation of dismissal is effective automatically."[17]

■ State National's argument that Rule 58 requires a separate entry of judgment is unavailing. Every court to have considered the nature of a voluntary stipu-

11. Fed. R. Civ. P. 60(b) (emphasis added); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

12. "When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

13. *See Torres v. Chater*, 125 F.3d 166, 167–68 (3d Cir. 1997); *see also Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985) ("Rule 60(b) must be limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291. A party should not get immediate review of an order for

discovery, or one denying summary judgment and setting the case for trial, just by filing a Rule 60(b) motion to set aside the order and then appealing the denial of this motion.").

14. *See United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.") (emphasis added); *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("A district court has the inherent power to reconsider and modify its interlocutory ·orders *prior to the entry of judgment* . . . .") (emphasis added).

15. Fed. R. Civ. P. 41(a)(1)(A)(ii).

16. *Id.; see also* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2363 (3d ed. 2015).

17. *First Nat'l Bank of Toms River, N.J. v. Marine City, Inc.*, 411 F.2d 674, 677 (3d Cir. 1969).

lation of dismissal under Rule 41(a)(1)(A)(ii) has come to the conclusion that it is immediately self-executing.[18] No separate entry or order is required to effectuate the dismissal.

■■■ Once the voluntary stipulation is filed, the action on the merits is at an end.[19] "[A]ny action by the district court after the filing of [the Stipulation of Dismissal] can have no force or effect because the matter has already been dismissed."[20] A voluntary dismissal deprives the District Court of jurisdiction over the action.

The Dissent criticizes our discussion of *Anago Franchising*, *SmallBizPros*, and *Smith* as a line of cases arising out of the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Company of America*.[21] But *Kokkonen* is not relevant here. *Kokkonen* speaks to the District Court's ancillary jurisdiction to enforce the settlement agreement that served as a basis for the parties' stipulated dismissal. In this case, the parties are not concerned with enforcing their settlement agreement. Rather, we are concerned with the District Court's jurisdiction over the original matter.

The Dissent misinterprets the basis of our holding: *Kokkonen* does not compel the conclusion that the Stipulation of Dis-

missal divested the District Court of jurisdiction; the Federal Rules of Civil Procedure do. Long before the Supreme Court decided *Kokkonen*, we held that a stipulated dismissal under Rule 41 was automatic.[22] We have also held that a "timely notice of voluntary dismissal invites no response from the district court and permits no interference by it."[23] The Dissent attempts to distinguish the cases cited here as merely invoking the *Kokkonen* principle, but both *Versata Software, Inc. v. Callidus Software, Inc.* and *Meinecke v. H&R Block of Houston* focus on the broader concerns relevant here.

In *Versata Software*, the Federal Circuit vacated its own opinion because it was issued after the parties voluntarily dismissed their case before the case had been decided.[24] Recognizing that the joint stipulation of dismissal between the parties automatically dismissed the case "with no further action of the district court required," the Federal Circuit held that "there was no longer a controversy" pertinent to the parties' appeal.[25]

Similarly, in *Meinecke v. H&R Block of Houston*, the Fifth Circuit held that the District Court's grant of summary judgment in favor of the defendants was "of no consequence" because the parties had three days earlier filed a stipulation of

18. *E.g.*, *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277–78 (11th Cir. 2012); *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011); *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010); *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 624 (7th Cir. 2007); *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984).

19. *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989).

20. *SmallBizPros*, 618 F.3d at 463; *see also Anago Franchising*, 677 F.3d at 1279–80 ("A district court loses all power over determinations of the merits of a case when it is voluntarily dismissed."); *Versata Software, Inc. v.*

*Callidus Software, Inc.*, 780 F.3d 1134, 1136 (Fed. Cir. 2015) (vacating its own opinion, which was issued after the parties voluntarily dismissed their case pursuant to Rule 41(a)(1)(A)(ii)).

21. Dissent at 414–15 n.2.

22. *First Nat'l Bank*, 411 F.2d at 677.

23. *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008).

24. 780 F.3d at 1136.

25. *Id.* (citing *First Nat'l Bank*, 411 F.2d 674).

dismissal pursuant to Rule 41(a)(1)(A)(ii).[26] Even though the District Court's order approving of the stipulated dismissal was handed down on the same day as the order granting summary judgment, the Fifth Circuit recognized that the dismissal was effective when filed, and "any further actions by the court [were] superfluous."[27]

### 3. *The Final Judgment*

 After the stipulated dismissal, there was nothing left for the District Court to do. The Stipulation of Dismissal "resolv[ed] the matter."[28] "A final judgment is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[29] A final order accomplishes two ends: it disposes of all of the claims presented to the district court, and it leaves "nothing further for the district court to do."[30]

Following the Stipulation of Dismissal, all of the claims against all of the parties remaining in the litigation had been resolved. Because Whiteside was no longer a party to the litigation, and the District Court had not exercised its inherent power to review its previous interlocutory order dismissing her, the only claims remaining were the claims asserted by State National against the County. Because the Stipulation of Dismissal resolved these claims, the Stipulation of Dismissal was a final judgment. [31]

State National's Rule 60(b) motion did not prevent the Stipulation of Dismissal from serving as the final judgment. State National's claims against Whiteside had already been resolved, and every available method of reinstating its claims against her had been exhausted.[32] State National cannot rely on an improper procedural motion to argue that its own dismissal of the case was not a final judgment. Because the District Court could not have reinstated the claims against Whiteside after the stipulated dismissal, there was "nothing further for the district court to do."[33]

**26.** 66 F.3d 77, 82 (5th Cir. 1995) (per curiam).

**27.** *Id.* (internal quotation marks omitted).

**28.** *Lusardi v. Xerox Corp.*, 975 F.2d 964, 970 n. 9 (3d Cir. 1992).

**29.** *Riley v. Kennedy*, 553 U.S. 406, 419, 128 S.Ct. 1970, 170 L.Ed.2d 837 (2008).

**30.** *Michelson v. Citicorp Nat'l Servs., Inc.*, 138 F.3d 508, 513 (3d Cir. 1998) (internal quotation marks omitted).

**31.** This Court and others have also recognized that a voluntary dismissal with prejudice constitutes a final order, thereby making interlocutory orders appealable. *See, e.g., Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 17 (D.C. Cir. 2014) (stating that "[e]very circuit permits a plaintiff, in at least some circumstances, voluntarily to dismiss remaining claims or remaining parties from an action as a way to conclude the whole case in the district court and ready it for appeal" and collecting cases); *M&K*

*Welding, Inc. v. Leasing Partners, LLC*, 386 F.3d 361, 364 (1st Cir. 2004) (holding that the parties' Stipulation of Dismissal with prejudice was a final judgment); *O'Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88, 92 (3d Cir. 1989) (holding that a plaintiff's voluntary dismissal of his claims with prejudice constituted a final order that was appealable); *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l. Co.*, 600 F.3d 878, 883–84 (7th Cir. 2010) (holding that, because the claims were dismissed with prejudice, there was a final judgment for purposes of appellate review). *See also* 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3914.8 (2d ed. 2015) ("Voluntary dismissal of the remaining parts of the case provides an obvious means of achieving final disposition.").

**32.** *Anago Franchising*, 677 F.3d at 1275 ("[V]oluntary dismissal of a case strips the court of jurisdiction and leaves it without the power to make legal determinations on the merits.").

**33.** *See Michelson*, 138 F.3d at 513.

Nor does the single statement in the Stipulation of Dismissal that nothing in the settlement "shall be construed in any way to release or otherwise limit the claims State National has asserted or may assert against Donna Whiteside" prevent finality. The parties did not make their dismissal contingent on the District Court's ruling on State National's Rule 60(b) motion. And the parties did not make a motion before the District Court for it to decide on whether the claims against Whiteside should be reinstated before dismissing the case. Moreover, State National and the County cannot speak for Whiteside in their stipulated dismissal; Whiteside had already been dismissed from the litigation years earlier.

■■■ The Dissent argues that, because the District Court "[a]fter the stipulation of dismissal ... both accepted briefing from the parties and issued an order permitting additional briefing," the District Court "intended to retain jurisdiction until it ruled on State National's motion"[34] and "to exercise its inherent power to reconsider [its prior] decision."[35] The District Court's actions, however, cannot override the application of jurisdictional rules, as both this Court and the Supreme Court have held. The Dissent's position is just *dead wrong.*

In *Lizardo v. United States*, we held that an untimely Rule 59(e) motion does not toll the time to appeal under Rule 4(a)(4)(A) "even if the party opposing the motion did not object to the motion's

untimeliness and the *district court considered the motion on the merits.*"[36] We expressed concern about basing the timeliness of post-judgment motions on what occurred in the District Court because such a system would inject uncertainty into the appeal timeline and would be based on the "happenstance of a particular litigation."[37] Instead, the Federal Rules of Appellate Procedure require uniformity. Thus, we held that the appellant's appeal was untimely even though the District Court in that case had ruled on the merits of his Rule 59(e) motion.

Similarly, the Supreme Court, in *Bowles v. Russell*, in rejecting the "unique circumstances doctrine,"[38] held that a District Court's assurances about timeliness, and a party's good faith reliance on them, are not enough to cure a jurisdictional defect.[39] There, the District Court had told the appellant Bowles that he had seventeen days to file his notice of appeal. In reality, he had only fourteen. Bowles filed his notice of appeal on the sixteenth day—one day before the District Court's deadline and two days after the actual deadline.[40] The deadline was jurisdictional, and as a result, it could not be tolled or waived. Thus, the Court held, his notice of appeal was untimely, and it dismissed his appeal.[41]

These cases demonstrate that no matter how well-meaning the District Court's actions may be, they cannot confer jurisdiction where it is lacking. And the District Court's erroneous consideration of an im-

---

34. Dissent at 415.

35. Dissent at 413.

36. *Lizardo v. United States*, 619 F.3d 273, 278 (3d Cir. 2010) (emphasis added).

37. *Id.* at 279.

38. "The "unique circumstances doctrine" permitted appellate courts to excuse untimeli-

ness where a party belatedly acted in reliance on an erroneous district court ruling." *Mobley v. C.I.A.*, 806 F.3d 568, 577 (D.C. Cir. 2015).

39. 551 U.S. 205, 214–15, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007).

40. *Id.* at 207, 127 S.Ct. 2360.

41. *Id.* at 206–07, 215, 127 S.Ct. 2360.

proper or untimely motion cannot alter the timeliness requirements of Federal Rule of Appellate Procedure 4(a). In this case, the District Court's consideration of State National's Rule 60(b) motion cannot confer jurisdiction where the case had already been dismissed. Because of the dismissal, no claims remained against any party still involved in the litigation; the stipulated dismissal was the final decision.

### 4. *Appealability and Tolling*

 Once an order becomes "final," the time for appeal begins to run.[42] Following the final judgment, Federal Rule of Appellate Procedure 4(a) provides that the party wishing to appeal has thirty days to do so. State National did not file within thirty days of its joint Stipulation of Dismissal—the final judgment. Therefore, State National's appeal—sixty-two days after the final judgment—was untimely. The thirty-day time requirement in Federal Rule of Appellate Procedure 4(a) is jurisdictional and mandatory, and the failure to comport with this mandatory deadline deprives this Court of appellate jurisdiction.

 Contrary to State National's contention, none of the tolling provisions of Federal Rule of Appellate Procedure 4(a)(4)(A) is applicable here. State National argues that its Rule 60(b) motion tolled the time to file its appeal. Under Federal Rule of Appellate Procedure 4(a)(4)(A)(vi), a Rule 60(b) motion "filed no later than 28 days after the judgment is entered," tolls the time to file an appeal.[43] The time to

appeal runs from the entry of the order disposing of the Rule 60(b) motion. But as previously explained, State National's motion to renew its claims was not a proper Rule 60(b) motion. "[T]he function of the motion, and not the caption, dictates which Rule is applicable."[44] Because State National's motion was not actually a Rule 60(b) motion, its motion to renew its claims against Whiteside cannot extend the time to file an appeal under Federal Rule of Appellate Procedure 4(a)(4)(A)(vi).

State National's motion was also not a timely Rule 59(e) motion that could operate to extend the time to file a timely appeal. Under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), if a party timely files a motion to alter or amend the judgment under Rule 59, the time to file an appeal runs from the entry of the order disposing of such motion. A Rule 59 motion is timely when it is filed within twenty-eight days of the order or judgment for which reconsideration is sought.[45] State National had previously filed a timely Rule 59 motion on March 20, 2010, immediately after Whiteside was first dismissed from the litigation.[46] Its motion to renew its claims against Whiteside, which State National contends tolls the time to appeal, was not filed within twenty-eight days of Whiteside's dismissal and thus cannot extend the time for State National to appeal.

The Dissent questions why we cannot consider State National's Rule 60(b) motion as a premature motion that "ripened" after the Stipulation of Dismissal was filed.

---

42. *Lusardi v. Xerox Corp.*, 975 F.2d at 970 n. 9.

43. Fed. R. App. P. 4(a)(4)(A)(vi).

44. *United States v. Fiorelli*, 337 F.3d 282, 287–88 (3d Cir. 2003).

45. Fed. R. Civ. P. 59.

46. The Dissent does not address this fact, but it is an important one. The Rule 60(b) motion was another attempt by State National to relitigate Whiteside's dismissal. But the District Court's decision denying State National's Rule 59(e) motion—as well as its decision granting Whiteside's dismissal under Rule 12(b)(6)—could have been appealed when the clock ran from the date the Stipulation of Dismissal was entered.

Even if we assume that State National's Rule 60(b) motion was the proper means of getting review of Whiteside's dismissal, it would still not toll the time to appeal. This is because Federal Rule of Appellate Procedure 4(a)(4)(A)(iv) permits tolling of the time to appeal if a Rule 60 motion is "filed no later than 28 days after the judgment is entered." In State National's view, the judgment entered is Whiteside's dismissal. However, that judgment was entered years before State National filed its Rule 60(b) motion. Thus, under either view of the nature of State National's Rule 60(b) motion, tolling is inapplicable.[47]

The Dissent also argues that "motions invoking Rule 60(b) should be treated flexibly and functionally."[48] In making this argument, the Dissent relies on *Torres v. Charter*, in which this Court allowed appeal of the denial of a Rule 60(b) motion, even though the motion sought review of a supposedly interlocutory order.[49] In that case, however, the "interlocutory" order subject to the Rule 60(b) motion was a district court's order to remand a claimant's Social Security disability claim to the Commissioner of the Social Security Administration. This Court explained that if we did not entertain the appeal, "on remand the claimant may receive an award of benefits, in which event he will not appeal, and it is very doubtful the Commissioner could appeal."[50] Under those circumstances, we held that such an order was final and could be the basis for a Rule 60(b) motion because it was likely that appellant would be unable to secure appel-

late review of that decision. That situation is not applicable here. After the stipulated dismissal, State National could have appealed the underlying dismissal of Whiteside on Rule 12(b)(6) grounds. Thus, State National was not unable to secure appellate review of Whiteside's dismissal, and *Torres*'s exception to the requirement of finality for Rule 60(b) motions is inapposite.

■■■ It is strict to require State National to file an appeal while the District Court was apparently still considering State National's Rule 60(b) motion, even if it was an improper one. But jurisdiction is a "strict master."[51] The Stipulation of Dismissal was effective immediately, and because all of the remaining claims were resolved by that Stipulation, the stipulated dismissal was a final judgment from which the time to appeal began to run. State National's failure to appeal within thirty days of the final judgment deprives this Court of jurisdiction to hear its appeal. The District Court's consideration of a motion that it lacked the power to grant or deny cannot excuse this failure.

B.

Because we hold that we lack jurisdiction on the basis of State National's untimely notice of appeal, we do not reach the alternative jurisdictional argument advanced by Whiteside that a notice of appeal that references only an order denying a Rule 60(b) motion does not draw into

---

47. The Dissent also claims that we are "abolishing Rule 60(b) relief for parties in State National's position." Dissent at 419 n.7. But this is far from the case. Because State National's motion sought review of an interlocutory order, it was not a true Rule 60(b) motion. We do not suggest that State National could never have sought Rule 60(b) relief—

only that it could not do so before a "final judgment, order, or proceeding."

48. Dissent at 417.

49. 125 F.3d at 168–69.

50. *Id.* at 168.

51. *SmallBizPros, Inc.*, 618 F.3d at 464.

question an underlying dismissal under Rule 12(b)(6).[52]

## III.

For the foregoing reasons, we will dismiss this case for lack of jurisdiction.

JORDAN, Circuit Judge, dissenting.

The Majority acknowledges that its interpretation of the operative rules of procedure is "strict." (Majority Op. at 411.) But the interpretation goes beyond strict; with all respect, it is wrong. I therefore dissent from the dismissal of the appeal.

Here are the key procedural steps and the dates on which they occurred. The District Court dismissed State National Insurance Company's claims against Donna Whiteside in an order dated March 17, 2010. Over four years later, on April 25, 2014, State National filed a motion for leave to renew its malpractice claims against Whiteside,[1] styled as a motion pursuant to Fed. R. Civ. P. 60(b)(6). The District Court initiated active litigation by soliciting briefing and ordering settlement negotiations. The litigation proceeded between Whiteside and State National with neither party questioning the District Court's jurisdiction. During the battle over the motion to reinstate the claims against Whiteside, State National separately entered a stipulation of dismissal with the County of Camden on October 14, 2014. Nothing in the stipulation limited State National's efforts to renew its claims against Whiteside. On the contrary, the stipulation provided that it should not be construed "in any way to release or other-wise limit" those claims. (App. 326.) The District Court then entered an order, on December 1, 2014, denying State National's motion for leave to proceed with its claims against Whiteside, and, in the same order, directed that the matter be marked as closed. State National filed its notice of appeal on December 16, 2014.

As my colleagues in the Majority see it, even though State National was trying to obey court orders to actively litigate its motion to reinstate its claims against Whiteside, it was actually allowing the clock to run on its time to appeal. All that litigation wound up being a nullity. It turns out that, unbeknownst to the District Court or the parties, State National was foolishly forfeiting claims worth perhaps millions of dollars. As the Majority would have it, State National could only maintain its appeal rights by choosing between two bad alternatives: it could abandon its settlement of its separate claim against the County, or it could appeal the dismissal of the claims against Whiteside even as the District Court was actively reconsidering that dismissal. The federal rules of civil procedure and of appellate procedure are meant to permit the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and to allow district courts to fully resolve all issues in the first instance so that appellate review is not "piecemeal," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). It would therefore be strange if the rules really did put State National in that bind. But, properly understood, they do not.

---

**52.** *See Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) ("[I]f we determine that we do not have jurisdiction over this appeal, our 'only function remaining [is] that of announcing the fact and dismissing the cause.'" (quoting *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998))).

1. State National's claims against Whiteside comprised allegations of professional negligence, legal malpractice, breach of fiduciary duty, and breach of contract.

The Majority has the rules wrong, but it is correct that the October 14, 2014 stipulation of dismissal terminated the litigation between State National and the County. It is also correct that the District Court had the power to reinstate the claims against Whiteside either through its inherent powers to reverse an interlocutory decision or through ruling on a Rule 60 motion. The Majority incorrectly concludes, however, that the District Court failed to reinstate State National's claims through either of those means. I disagree. Though the stipulation of dismissal did terminate State National's suit against the County, it did nothing to divest the Court of jurisdiction over the entirely separate claims against Whiteside. Therefore, whether characterized as a motion invoking the District Court's inherent power or a Rule 60(b) motion, State National's motion did keep the matter against Whiteside open until it was resolved by the District Court. Therefore, the time to appeal did not begin to run until the Court issued its December 1, 2014 order denying the motion, and State National's appeal is timely.

## I. Discussion

My colleagues acknowledge that, before the County and State National filed their stipulation of dismissal, the District Court had inherent authority to reinstate the claims against Whiteside. They also seemingly recognize that, had the order dismissing Whiteside been final before the stipulation of dismissal, the District Court could have given State National relief under Rule 60(b). But they nevertheless hold that State National can get the benefit of neither of those avenues for relief. The Majority says instead that the Court's inherent authority was lost when the stipulation of dismissal was entered, and that Rule 60(b) relief was unavailable before the stipulation of dismissal was entered because the order dismissing Whiteside

was not final. I reject both of those conclusions and would hold that State National could have received relief from the District Court by either route.

## A. The District Court's Jurisdiction Under Its Inherent Authority

The clearest way to resolve the question of timeliness would be to rule that the dismissal of State National's claims against Whiteside was not final until December 1, 2014, when the District Court denied State National's motion to renew its claims. It is true that the claims against Whiteside had earlier been dismissed by what all agree was an interlocutory order, but the District Court chose to exercise its inherent power to reconsider that decision. State National filed its motion for leave to renew its claims against Whiteside on April 25, 2014, and three days later, the District Court set deadlines for considering the motion. Both sides then actively litigated the matter until it was finally decided on December 1. That was thus the true date of final judgment on the claims against Whiteside, at which point the time to appeal began to run.

The Majority reaches a contrary conclusion by saying that the District Court was divested of any jurisdiction over the claims against Whiteside when State National and the County filed a stipulation of dismissal on October 14, 2014. My colleagues seem to agree that, just a day earlier, the dismissal of the claims against Whiteside was interlocutory and unappealable, and that the District Court was free to reinstate the claims against Whiteside. Yet, even as the District Court was actively considering doing just that, it lost jurisdiction, according to the Majority, because the plaintiff's claim against a separate defendant was settled.

To reach that conclusion, my colleagues rely upon a series of cases that stand only for the unremarkable proposition that when a plaintiff and a defendant resolve their dispute through a Rule 41 stipulation of dismissal, that dispute ends and the district court loses jurisdiction. None of the cases they cite, however, suggests that the stipulation has any effect on ongoing litigation with a third party who is expressly excluded from the stipulation of dismissal.

The two cases that the Majority considers in detail are illustrative. In *Versata Software, Inc. v. Callidus Software, Inc.*, the Federal Circuit concluded that a pending interlocutory appeal was mooted when the two parties terminated their litigation through a Rule 41 stipulation of dismissal. 780 F.3d 1134, 1136 (Fed. Cir. 2015). I agree that any pending appeal between State National and the County would have been mooted by their stipulation of dismissal, but that says nothing about the separate claims against Whiteside.

**2.** My colleagues in the majority also cite several cases relying on the Supreme Court's discussion of Rule 41(a)(1)(A)(ii) in *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In *Kokkonen*, the Supreme Court considered whether, after the parties entered a stipulation of dismissal under what is now Rule 41(a)(1)(A)(ii), a district court could exercise ancillary jurisdiction to enforce those parties' settlement agreement. *Id.* at 378, 114 S.Ct. 1673. The Court determined that, if the stipulation was entered without any formal endorsement by the district court, the court lost jurisdiction over enforcement. *Id.* at 380–81, 114 S.Ct. 1673. My colleagues agree that *Kokkonen* speaks only to a district court's ancillary jurisdiction and that the concern in the present case is instead with "jurisdiction over the original matter." (Majority Op. at 407.) Nevertheless, they cite several cases from other Circuits applying the *Kokkonen* principle. *E.g., Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279–80 (11th Cir. 2012); *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463–64 (5th Cir.

In *Meinecke v. H & R Block of Houston*, the Fifth Circuit voided a district court's grant of summary judgment on claims that had already been resolved by a Rule 41 stipulation of dismissal. 66 F.3d 77, 82 (5th Cir. 1995). Of note, not only did that decision fail to affect non-parties to the stipulation of dismissal; it did not even affect all the claims among the parties to the stipulation. Immediately after declaring contract claims against a defendant resolved by the stipulation, the court went on to consider summary judgment on discrimination claims against the very same defendant that had not been resolved by the stipulation. *Id.* at 82–83. Just as the *Meinecke* court could distinguish between claims resolved by a stipulation of dismissal and those unaffected by it, we should similarly distinguish between those claims terminated in State National's stipulation of dismissal with the County and those claims, against an entirely separate party, that were expressly excluded from the stipulation.[2]

2010); *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989). None of those cases involved an additional party actively litigating separate issues unrelated to the stipulation of dismissal. In such a case, which is what we have before us now, a district court has ongoing subject-matter jurisdiction without any need to assert ancillary jurisdiction, so the holding in *Kokkonen* is not in play.

*Kokkonen* is instructive, however, because it tests the constitutional bounds of district courts' subject-matter jurisdiction following a stipulation of dismissal. Even if those strictures applied to this case, which they do not, the correct conclusion is that the District Court did retain jurisdiction over the claims against Whiteside. In *Kokkonen*, the Supreme Court made clear that a district court can retain jurisdiction over a case wholly resolved by a stipulation of dismissal as long as it does so explicitly, even to enforce a settlement agreement collateral to the underlying litigation. 511 U.S. at 381, 114 S.Ct. 1673. In this case, the District Court was actively considering the case against Whiteside and thus made

In short, I do not dispute that we have long held that "a stipulated dismissal under Rule 41 [is] automatic." (Majority Op. at 407 (citing *First Nat. Bank of Toms River, N.J. v. Marine City, Inc.*, 411 F.2d 674, 677 (3d Cir. 1969)).) What I do dispute is that a stipulation that resolves certain claims somehow nullifies ongoing litigation of separate claims against a separate party.

My colleagues' implicit assumption is that the case against Whiteside was dormant, awaiting only the completion of the suit against the County to become final and appealable. But, in reality, the District Court was actively overseeing litigation between Whiteside and State National on whether to allow renewal of the claims against Whiteside, so that the matter was far from resolved. On September 10, 2014—over a month before the stipulation of dismissal—the Court ordered State National and Whiteside to participate in settlement discussions before a magistrate judge. Those discussions took place on September 24. When they failed to produce a settlement, the Court granted Whiteside's request to file a supplemental brief on September 25, and then, on October 2, ordered Whiteside to file the brief

within 30 days. That brief was filed on October 15, one day after the stipulation of dismissal. On October 16—now two days after the stipulation—the Court issued an order granting State National's request to file a response to Whiteside's brief, and that response was filed on October 24. All this culminated in the District Court's December 1, 2014 order denying the motion for leave to renew the claims against Whiteside.

The ongoing litigation over the Whiteside claims demonstrates that the case was open and active. In resolving the motion to reinstate the claims against Whiteside, the District Court was simply exercising its "jurisdiction over the original matter," (Majority Op. at 407), congruent with the settlement's terms that "State National intends to maintain its claims against Donna Whiteside." (App. 332.) After the stipulation of dismissal between State National and the County, the Court both accepted briefing from State National and Whiteside and issued an order permitting additional briefing. It quite obviously intended to retain jurisdiction until it ruled on State National's motion, and the parties understood the case against Whiteside to be active and unaffected by the stipulation.[3]

manifest its intention to retain jurisdiction. The conduct of the Court and the parties indicates that all of them shared that understanding. Indeed, the stipulation of dismissal explicitly confirmed as much, saying, "Nothing herein shall be construed in any way to release or otherwise limit the claims State National has asserted or may assert against Donna Whiteside arising out of her alleged legal malpractice...." (App. 326.) On these facts, I would conclude that, even if *Kokkonen* applied, the District Court acted effectively before the stipulation of dismissal to assert its continuing jurisdiction over the claims against Whiteside.

That conclusion is bolstered by our Court's liberal standard for evaluating a district court's retention of jurisdiction following a settlement agreement. There is not

any magic form of words that the judge must intone in order to make the retention of jurisdiction effective. All that is necessary is that it be possible to infer that he did intend to retain jurisdiction—that he did not dismiss the case outright, thereby relinquishing jurisdiction. *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317 (3d Cir. 1990) (quoting *McCall–Bey v. Franzen*, 777 F.2d 1178, 1188 (7th Cir. 1985)).

3. The Majority contends, to the contrary, that "the parties did not make a motion before the District Court for it to decide on whether the claims against Whiteside should be reinstated before dismissing the case." (Majority Op. at 409.) But that is simply not so. State National filed its motion for leave to renew its malpractice claims against Whiteside on April 25,

The Majority emphasizes that the "District Court's actions ... cannot override the application of jurisdictional rules." (Majority Op. at 409.) I do not disagree, and I concur with my colleagues' readings of *Bowles v. Russell*, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), and *Lizardo v. United States*, 619 F.3d 273 (3d Cir. 2010), that a district court's mistaken consideration of untimely motions does not excuse the untimeliness. That, however, merely demonstrates that my colleagues are asking the wrong question. If the case against Whiteside had definitively ended in 2010, it would be true that the District Court's subsequent actions in 2014 were irrelevant. But the 2010 order dismissing Whiteside was not final; "it was an interlocutory order that was not immediately appealable." (Majority Op. at 406.) Therefore, until the entire case was made final, the District Court had ongoing inherent authority to revise its interlocutory order and revive the suit against Whiteside. The question before us is whether it did so revive the suit. Its actions and intentions in ordering active litigation on the claims against Whiteside, and the parties' understanding of those actions, certainly are relevant to that determination and prove that the litigation between State National and Whiteside was revived and active. In fact, everybody associated with the litigation, except for the two members of the Majority, understood it that way. *Cf. infra* pp. 418–19.

## B. Rule 60(b) Motion Seeking Relief from a Final Order

The Majority rejects the above reasoning by concluding that the moment the stipulation of dismissal was filed, the dismissal of the claims against Whiteside became final, and all issues among all parties were resolved. It thus concludes that the time to appeal began to run on that date. Even if the stipulation of dismissal ended the case as to all claims against all parties (which it did not), we should still not dismiss this appeal but should instead treat State National's pending motion as a Rule 60(b) motion for post-judgment relief.[4] That, in turn, would mean that the time to appeal was tolled until the motion was resolved. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

State National's motion was, in fact, framed in terms of Rule 60(b)(6), so it is puzzling that the Majority is at such pains to avoid treating it that way. Since my colleagues are adamant that the stipulation of dismissal made all interlocutory orders final, they should be glad to treat the further litigation as having proceeded under the terms of Rule 60(b). Instead, they insist that the pending motion was invalid, so that the ongoing litigation before the District Court was meaningless.

There are, however, two ways that the District Court could have properly considered State National's motion as a Rule 60(b) request for relief from final judgment. First, it could have treated the 60(b) motion as legitimate even though, when it was filed, there was no final order in the case. That approach is, admittedly, in tension with my conclusion that the motion is better considered under the District Court's inherent power to review interlocutory orders. But our Court has previously considered appeals from denials of Rule 60(b) motions that concerned interlocutory orders, and we could do so here if we opted not to analyze the motion as invoking the District Court's inherent power. In

2014, almost six months before the stipulation of dismissal.

4. Rule 60(b) allows a court, on "motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding...." Fed. R. Civ. P. 60(b).

the alternative, accepting that the motion was premature when filed, the District Court could properly have treated it as ripening into a Rule 60(b) motion once the stipulation of dismissal made the underlying interlocutory order final.

### 1. State National's Motion as an Ongoing Rule 60(b) Motion

The first avenue—that by which the District Court was free to consider State National's motion under Rule 60(b) from the time the motion was filed—is supported by the generally flexible treatment our Court has given Rule 60(b) motions. It is true, as we said in *Torres v. Chater*, that by its own terms, Rule 60(b) applies only to "final" judgments, orders, and proceedings, so that "purely interlocutory" orders are "not within the scope of Rule 60(b)." 125 F.3d 166, 168 (3d Cir. 1997). But that principle simply governs whether the strictures of Rule 60(b) apply, not whether a district court can consider more generally a motion to alter an interlocutory decision. As the Advisory Committee Notes to Rule 60 explain in describing the finality requirement, "interlocutory judgments are not brought within *the restrictions* of the rule, but rather they are left subject to the *complete power of the court* rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment (emphasis added); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."). Because a motion for relief from an interlocutory order is treated more liberally than a 60(b) motion, there is no reason to consider State National's original motion as a nullity simply because it was presented under Rule 60(b)(6).

Our case law makes clear that motions invoking Rule 60(b) should be treated flexibly and functionally. In *Torres*, while we said that Rule 60(b) applied only to final orders, we did so in reaching the conclusion that a Rule 60(b) motion was not appealable under 28 U.S.C. § 1291 unless it related to a final order. *Torres*, 125 F.3d at 168. The point was to prevent untimely appeals and to direct district courts to resolve all issues before a party was put to the choice of filing an appeal. The goal of our opinion in *Torres* was precisely contrary to the purposes for which the Majority now cites it.

In fact, rather than insisting that Rule 60(b) motions are null and void unless in reference to a clearly final order, *Torres* suggested just the opposite. We *allowed* appeal of the denial of a motion brought under Rule 60(b), even though the motion was in reference to a seemingly interlocutory order. We took a functional approach to assessing finality and determined that, when an otherwise interlocutory order would "likely escape appellate review, the district court properly considered that order as final for purposes of Rule 60(b)," making its "denial of the motion ... final and appealable...." *Id.* at 169. We thus declined to adopt the rigidly formalistic interpretation of Rule 60 that today's Majority relies upon.

We extended *Torres*'s flexible analysis in a later case, *Penn West Associates, Inc. v. Cohen*, to hold that, "even where an underlying order is purely interlocutory, we may nonetheless review a district court's denial of a Rule 60(b) motion if the denial has the effect of 'wrap[ping] up all matters pending on the docket, thus making the decision final.'" 371 F.3d 118, 123-24 (3d Cir. 2004) (quoting *Torres*, 125 F.3d at 168). That language from *Penn West* plainly authorizes a district court to entertain a

premature. Rule 60(b) motion to review an order that is itself interlocutory—exactly what the District Court was doing with the order dismissing the Whiteside claims.[5] *Accord Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151, 153 (7th Cir. 1985) ("The denial of a motion under Rule 60(b) is a final and appealable order, and this could be so in rare cases *even when the underlying order is interlocutory*." (emphasis added)). *Penn West* also teaches that whether a district court's decision on a Rule 60(b) motion is itself final or interlocutory depends on a functional analysis of whether it "wrap[s] up all matters pending." 371 F.3d at 124.

If one takes the position that State National's motion to reconsider should be addressed as a Rule 60(b) motion, I would say that *Penn West* controls and compels us to rule that State National's Rule 60(b) motion was proper, thereby tolling the time to appeal. In *Penn West*, we considered whether Rule 60(b) applied to a motion to reopen a case that had been administratively closed. *Id.* at 126. We ruled that an administrative closing was not a final order, so that it was inappropriate for the district court to consider reopening the case under the restrictions of Rule 60(b). Rather than treat the premature Rule 60(b) motion as null and void, though, we remanded to the district court to consider the motion under an equitable analysis

without Rule 60(b) restrictions. *Id.* at 128–29.[6] Applying those principles to this case, the District Court could have properly considered the Rule 60(b) motion and given it more liberal treatment because it was initiated before the interlocutory order dismissing the claims against Whiteside was made final.

### 2. State National's Motion as a Ripened Rule 60(b) Motion When the Underlying Interlocutory Order Became Final

The Majority provides no reason why the District Court could not have treated State National's premature Rule 60(b) motion as having ripened into a true Rule 60(b) motion after the stipulation of dismissal was filed and the order dismissing Whiteside became unambiguously final. As explained above, *Torres* and *Penn West* undermine the Majority's determination that a premature Rule 60(b) motion is thereafter a nullity, since in both those cases we considered appeals of Rule 60(b) rulings when the underlying order's finality was uncertain. Indeed, no one in this case understood the procedural events in the way that the Majority now does. State National and Whiteside litigated before the District Court under the assumption that the motion at issue was valid under Rule 60(b), and they did so with the active

---

**5.** Whiteside suggests that Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) cuts against this reading because it tolls the time to appeal a Rule 60 motion only "if the motion is filed no later than 28 days after the judgment is entered." But, though that language is clear in saying that the motion must be filed before 28 days have elapsed *after* final judgment, it says nothing about whether a motion may toll if filed *before* judgment is made final.

**6.** The *Penn West* holding also reaffirms that the proper way to evaluate the appealed motion is as a decision by the District Court under its inherent powers to reopen an inter-

locutory decision. The Majority appears to agree that, prior to the stipulation of dismissal, that is how the District Court should have reconsidered its dismissal of Whiteside. It is odd to say that the strictures of Rule 60(b) suddenly attached to the Court's reconsideration in progress merely because another party was dismissed. It may, therefore, have been improper for the District Court to rely on Rule 60(b)(6)'s exceptional circumstances requirement in denying the motion. But that speaks only to the appropriate standard for the District Court in reconsidering its decision, not to its ongoing jurisdiction.

approval and encouragement of the District Court. It is thus not just contrary to the Rules and our own precedent for us to declare, on appeal, that such good-faith litigation amounts only to "sound and fury, signifying nothing," William Shakespeare, *MacBeth* act 5, sc. 5; it is contrary to the first-hand understanding of all the participants in the process.

Practical considerations also support an interpretation of Rule 60(b) that would allow the District Court to reconsider the dismissal of the claims against Whiteside. Under the Majority's reading of the Rule, the District Court was free to reconsider the Whiteside dismissal under its inherent powers before State National and the County signed the stipulation of dismissal, but it was immediately stripped of all jurisdiction the moment the stipulation was entered. Such a conclusion effectively abrogates Rule 60(b) in cases in which there is a Rule 41 stipulation of dismissal. In the present case, it provides no point at which State National could have sought Rule 60(b) review of Whiteside's dismissal.[7] As my colleagues would have it, State National's motion to renew its claims against Whiteside was either a nullity when filed

or was voided with the entry of the stipulation. Either way, their position suggests that the District Court lacked jurisdiction to consider a Rule 60(b) motion concerning Whiteside's dismissal once the stipulation with the County was filed. If that were correct, then the Rules arbitrarily require a plaintiff in such circumstances to abandon settlement with one defendant in order to give the district court time to mull over independent claims against another defendant.

That is a particularly strange result because Rule 41 dismissals may themselves be reviewed by a district court under Rule 60(b). We have held that "any time a district court enters a judgment, even one dismissing a case by stipulation of the parties, it retains, by virtue of Rule 60(b), jurisdiction to entertain a later motion to vacate the judgment on the grounds specified in the rule." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993) (internal quotation omitted).[8] Even if a district court did not retain jurisdiction over settlement enforcement, we suggested in *Sawka* that it could set aside the settlement under "extraordinary circumstances" under Rule 60(b)(6). *Id.* at 140; *see also*

---

**7.** My colleagues in the Majority seemingly acknowledge that they are abolishing Rule 60(b) relief for parties in State National's position, because they argue that the Rule 60 motion was filed both too early and too late. It was too early for purposes of Rule 60 because it sought to review a dismissal order that was "interlocutory," so that a "Rule 60(b)(6) motion was not a proper avenue by which to challenge [Whiteside's] dismissal." (Majority Op. at 406.) At the same time, the motion was too late for purposes of Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) because the "judgment" it sought to review "was entered years before," so that the motion did not satisfy the 28-day time limit for Rule 4 tolling. (Majority Op. at 411.) Therefore, in the Majority's reading, State National's motion was defective because it asked for relief from a dismissal order that was the

Schrödinger's cat of procedural rulings—simultaneously too alive as an interlocutory order for purposes of Federal Rule of Civil Procedure 60 and too dead as a final judgment for purposes of Federal Rule of Appellate Procedure 4.

**8.** In *Kokkonen*, the Supreme Court considered a circuit split on the question of when a Rule 60(b) motion may reopen a case after a stipulation of dismissal. 511 U.S. at 378, 114 S.Ct. 1673. The Court noted that some circuits allow "reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal," while other circuits— ours included, in *Sawka*—do not treat that as sufficient. *Id.* The Court observed that its ruling in *Kokkonen* did not resolve that question because reopening a suit is a separate question from enforcing a settlement. *Id.*

*Bryan v. Erie County Office of Children and Youth*, 752 F.3d 316, 321 (3rd Cir. 2014) ("[T]he same ancillary jurisdiction that supports post-judgment enforcement proceedings supports proceedings to seek relief from the judgment."). If State National could seek Rule 60(b)(6) review of the actual stipulation of dismissal that supposedly stripped the District Court of all jurisdiction, it only makes sense that it could seek the same review of the order dismissing Whiteside, which became final—and thus appealable—only when the stipulation of dismissal was entered.

A district court's ability to grant post-judgment relief in a case like this is especially valuable. The basis of State National's motion to renew its claims against Whiteside was that the District Court's legal reasoning had shifted over the course of the litigation in a way that now would allow State National to assert malpractice claims against Whiteside. If changes in the District Court's legal reasoning really did undermine the final judgment, that is precisely the kind of error that Rule 60(b) is meant to address, by allowing district courts to correct and clarify their logic in the first instance rather than forcing an unnecessary appeal of a muddled final judgment.[9]

### C. Federal Rule of Appellate Procedure 4 and the Purpose of the Appellate Rules

Under the legal theories I have discussed, the clock for a timely appeal began to run with the District Court's December 1, 2014 order denying the motion for leave to renew the claims against Whiteside. Under the inherent authority theory, there simply was no final judgment with regard

to Whiteside until December 1, 2014, since the District Court had reopened the matter by entertaining the motion to reverse its interlocutory order. If, instead, the motion were to be treated as a Rule 60(b) motion, it tolled the time to appeal pending its resolution because it was filed "no later than 28 days after the judgment." Fed. R. App. P. 4(a)(4)(A). In either case, the December 16, 2014 appeal was "within 30 days after entry of the judgment or order appealed from" and was therefore timely. Fed. R. App. P. 4(a)(1)(A)(vi).

Both interpretations comport with the purpose of the Rules to have district courts fully resolve a case before it is appealed. As the Advisory Committee elaborated when it clarified Rule 4(a)(4) in 1979, "it would be undesirable to proceed with the appeal while the district court has before it a motion the granting of which would vacate or alter the judgment appealed from." Fed. R. App. P. 4(a)(4) advisory committee's note to 1979 amendment; *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58–59, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (observing one reason for the reform of Rule 4(a)(4) was to "clarify both the litigants' timetable and the courts' respective jurisdictions," in service of the principle "that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.").

In contrast, the Majority's holding frustrates the purpose of the Rules to limit appeals to truly final decisions. As we explained in *Penn West*, "a 'final decision' for purposes of appeal" is generally " 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " 371 F.3d at 125

---

9. I hasten to add that I am not saying or implying that State National's assertions about the District Court's reasoning are accurate. Nor am I suggesting that, if we got to

the merits, State National should prevail. I am only saying that we can and should get to the merits.

(quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). "[T]here is no final order if claims remain unresolved and their resolution is to occur in the district court." *Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997). The Majority's reading of the Rules throws into confusion what constitutes a final decision in a multi-claim, multi-party case where some claims are resolved via voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A). In the case before us, the Majority would have forced State National to file an appeal even as the District Court was actively considering a motion before it on the claims against Whiteside.

The alternatives I have suggested better comport, I believe, with the text and purpose of the Rules. Neither would treat cases disposed of by Rule 41 dramatically differently from those ended by other means, and both would give district courts the opportunity to resolve all the matters before them without encouraging parties to jump the gun with a premature appeal. Both would facilitate settlement by not forcing plaintiffs to abandon claims against certain defendants in order to settle with others. And, in keeping with *Kokkonen*, neither would do anything to expand the ancillary jurisdiction of federal courts.

I share the Majority's desire that parties be encouraged to appeal in a timely manner. But I am also concerned with interrupting our district courts' complete adjudication of cases before appeal, and I would not create hyper-technical traps for prospective appellants. The ordinary course of an adjudication is to reach final judgment, to resolve any post-judgment motions enumerated in Federal Rule of Appellate Procedure 4(a)(4)(A), and then for the aggrieved party to timely appeal. Under the able guidance of the District Court, that is the course this case took, and I would not strain to read complexities into the Rules that interrupt that sequence.[10]

## II. Conclusion

This case proceeded before the District Court in model fashion. The various claims were resolved in sequence; the parties were given a full opportunity to ventilate their issues; and, after the last remaining issue was definitively decided by the District Court, the aggrieved party appealed in short order. We should not interpret procedural rules to upset that orderly routine. I therefore respectfully dissent.

---

**10.** If the Majority's reading of the Rules is indeed correct, I cannot believe that such a result is what the Rules Committees of the Judicial Conference intended. I encourage the Civil Rules Committee to provide clarification for Federal Rule of Civil Procedure 41 to assure that Rule 60(b) motions may still be considered after the entry of a stipulation of dismissal, and likewise encourage the Appellate Rules Committee to clarify Federal Rule of Appellate Procedure 4 so that a stipulation of dismissal cannot be seen as overriding the tolling effects of 4(a)(4)(A) motions.